**Barbara SCHWERTFAGER, Plaintiff,**

v.

**CITY OF BOYNTON BEACH,
Defendant.**

No. 97–8356–CIV.

United States District Court,
S.D. Florida.

March 25, 1999.

David J. Feingold, Feingold & Kam, West Palm Beach, FL, for Plaintiff.

Jill S. Bilanchone, Johnson, Anselmo, Fort Lauderdale, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Final Summary Judgment [D.E. # 20]. Plaintiff, Barbara Schwertfager, filed this action against Defendant, the City of Boynton Beach, alleging that she was subjected to discrimination and was constructively discharged on account of a recognized disability. Plaintiff claims violations of Title I of the Americans With Disabilities Act, codified at 42 U.S.C. § 12101, et seq. (the "ADA").[1] Pur-

1. Although Plaintiff requested that her Charge of Discrimination filed with the Equal Employment Opportunity Commission be dual-

suant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as all arise under federal law.

Defendant has moved for summary judgment on the bases that: (1) Plaintiff's claims are time-barred; (2) Plaintiff has not established that she has a disability recognized by the ADA; (3) even if Plaintiff is considered to be a qualified individual with a disability, she has failed to establish that she was denied a reasonable accommodation; (4) Plaintiff has failed to establish that Defendant intentionally discriminated against her on the basis of a disability; (5) Plaintiff has not established a prima facie case of hostile work environment under the ADA; and (6) Plaintiff has failed to establish a prima facie case of constructive discharge.

Plaintiff challenges Defendant's representation that no genuine issues of material fact exist concerning whether Defendant intentionally discriminated against and harassed Plaintiff based on her asserted disability. Specifically, Plaintiff claims that: (1) she was denied a reasonable accommodation for her asserted disability; (2) she received disparate treatment when disciplined, evaluated, and given assignments; (3) she was humiliated and harassed to force her voluntary termination; (4) she was denied permission to return to work though medically able; and (5) she was demoted without cause.

The Court finds that Plaintiff has not satisfied the elements necessary to establish a prima facie case under the ADA. Having failed to establish a prima facie case of disability discrimination, Plaintiff has not established a prima facie case of disability-based hostile environment. Moreover, since Plaintiff cannot show dis-

ability discrimination and hostile environment, Plaintiff has not raised a genuine issue of material fact to sustain her claim of constructive discharge.

## I. Factual and Procedural Background

Plaintiff's claims derive from her employment as an Administrative Assistant II in Defendant's Utilities Department. The facts in the record, viewed in the light most favorable to Plaintiff, Barbara Schwertfager ("Schwertfager"),[2] reflect that Schwertfager was hired by Defendant, the City of Boynton Beach (the "City") in 1983 as a secretary in the City's Planning Department. In September 1990, Schwertfager was transferred into the City's Utilities Department (the "Department") as an Administrative Assistant II. As such, Schwertfager was responsible for, among other things, supervising the clerical staff in the Department and ensuring that assignments were distributed and reports were prepared.

From September 1990 through December 1994, Schwertfager's immediate supervisor was Peter Mazzella, the Assistant Director of the Utilities Department. Mazzella reported to John Guidry, the Director of the Utilities Department. Beginning in January 1995 until her resignation on August 2, 1995, Schwertfager reported directly to Guidry.

At some point in 1991, Schwertfager was diagnosed with breast cancer. As a result of this diagnosis, Mazzella and Guidry were informed that Schwertfager would have to undergo a radical mastectomy.[3] While Schwertfager was on leave, Georganne Barden, who had been a Secretary III in the Department, was assigned as

filed with the Florida Commission on Human Relations, Plaintiff has not alleged violations of the Florida Civil Rights Act of 1992, § 760.01, et seq., Fla.Stat.

**2.** The timeline created in the Statement of Facts included in Schwertfager's Memorandum in Opposition to Defendant's Motion for Summary Judgment conflicts with dates to which Schwertfager otherwise testified and pled. Accordingly, the Court refers to

Schwertfager's Complaint, her deposition testimony, and other materials in the record which are uniform.

**3.** Schwertfager claims that she also underwent surgery on her stomach, but does not state how the stomach surgery related to her cancer diagnosis. Moreover, since no mention of a stomach infirmity was pleaded in the Complaint, the Court will not address this issue.

Acting Administrative Assistant II. Barden performed Schwertfager's supervisory duties during her absence.

Shortly after her return to the Department in January 1992, Schwertfager was required to undergo chemotherapy treatments. The monthly treatments were intended to last for six months. Although the initial treatments did not cause adverse side effects, after Schwertfager's third chemotherapy session, she became "very sick." Schwertfager's Deposition, at 86. Due to her appearance and exhaustion, Schwertfager was told that she should go home and rest until her treatments ceased and she was strong enough to work. Due to the generosity of her coworkers, who donated an abundant amount of their sick leave time, Schwertfager remained on payroll at her usual salary throughout her extended leave. *See id.* at 107. Barden continued as the Acting Administrative Assistant II.

Finally, in July 1992, a month after her chemotherapy ended, Schwertfager returned to work. Although she was fully capable of performing the functions of her position, Barden remained in her temporary position to allow Schwertfager time to get acquainted with systems and operations changes that were implemented in her absence. At that time, the doctors believed that no more cancer cells remained in Schwertfager's system. However, Schwertfager would not be declared "cancer-free" until five years expired without incident.

In February 1993, Schwertfager took another leave of absence to have reconstructive surgery performed as a result of cosmetic damage caused by the mastectomy. This leave, which lasted about a month, was approved by her supervisors and was covered by the insurance provided by the City. She returned to her position as Administrative Assistant II on March 12, 1993. Although Schwertfager contends that she was fully willing and able to return to work and perform as expected, she states that the reconstructive surgery caused such discomfort that she was unable to change her bandages. Consequently, she visited a local hospital on a daily basis for assistance.[4]

Schwertfager had difficulty adjusting to the changes which had occurred in the Department. Her evaluation, encompassing the period from February 1992 through February 1993, reflected that, due to her extensive leave, many of her assigned functions had not been performed. Schwertfager was advised to improve her attendance, her supervisory abilities, and her knowledge of the computerized accounting system. This was Schwertfager's first evaluation as the Department's Administrative Assistant II. However, Mazzella's consultation with Schwertfager in connection with the evaluation did not occur until August 13, 1993. Barden was still assigned as the Department's Acting Administrative Assistant II.

In Schwertfager's written response to her evaluation, she admitted that her extended leave and prolonged illness impeded her ability to fulfill her job requirements. She also admitted that she had attended various management and systems operations classes offered by the City.

Shortly thereafter, Mazzella suggested that Schwertfager voluntarily downgrade her position to a Secretary III. As a Secretary III, Schwertfager would have been relieved of supervisory responsibilities, which capabilities she appeared to lack. At first, Schwertfager agreed, on condition that her salary remain the same. However, she later withdrew her consent.

Schwertfager's subsequent evaluation, covering the period from February 1993

---

4. Although Schwertfager claims that for five months following her reconstructive surgery she was unable to perform such essential life activities as dressing, cooking, and bathing, she did not mention these limitations in her Complaint or her Charge of Discrimination. Moreover, she neither pled nor charged that her supervisors refused to allow her to go to the hospital for assistance in re-dressing her bandages. Other than Schwertfager's latent assertions, there is no evidence in the record to corroborate these allegations.

through February 1994, showed little improvement. Although Mazzella found that Schwertfager had performed her non-supervisory assignments satisfactorily, her supervisory efforts remained deficient. Schwertfager's computer-based abilities were also lacking, making her unable to provide necessary supervision to the clerical staff. Mazzella also concluded that Schwertfager did not promote team work within the Department, and that sometimes her methods led to dissension. While substantial improvement was expected, Mazzella indicated that Schwertfager would be provided "suitable and appropriate training opportunities" to improve her performance. To monitor her progress, she was scheduled for re-evaluation in ninety days.

In response, Schwertfager offered to "take a more aggressive attitude" in administrating clerical responsibilities, and to provide a written report of her progress on a monthly basis. Although Schwertfager was only absent for a month during this evaluation period due to her reconstructive surgery, she again cited absenteeism as the major factor that prevented her from realizing improvement since her prior evaluation.

When no improvement was evident by January 1995, Schwertfager was relieved of her supervisory responsibilities in the Department. Because the rapport between Mazzella and Schwertfager had broken down, she was instructed to report directly to Guidry. From January 1995 until her resignation on August 2, 1995, Schwertfager reported directly to and received all assignments directly from Guidry.

Schwertfager alleges that she was repeatedly harassed upon her return following surgery.[5] This harassment, according to Schwertfager, included yelling and chastising in the presence of her subordinates, assigning Schwertfager to tasks which the City knew were beyond her capabilities and which were outside her job description, refusing to accommodate Schwertfager by assisting her in adjusting to changes implemented during her absence, and generally ignoring Schwertfager's condition.

Unable to endure this allegedly abusive behavior, Schwertfager resigned from the City. Her resignation was effective August 2, 1995. At that time, she did not inform the City that she believed she was the subject of discrimination. Nevertheless, on November 11, 1995, Schwertfager filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"). Upon receiving her right to sue letter, she filed this federal civil action, consisting of three counts: Count I is for disability discrimination in violation of the ADA; Count II purports to state a claim for disability harassment hostile environment under the ADA; and in Count III, Schwertfager alleges that, as a result of the City's discrimination and harassment, she was constructively discharged. Based on the record, judgment as a matter of law is appropriate to dispose of Schwertfager's claims.

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one that might *affect* the outcome of the suit under the governing law. *See id.* "[T]he substantive law will identify which facts are material, [and a] dispute about a material fact is genuine ... if the evidence is such that a reason-

---

**5.** Schwertfager has not identified to which surgery she refers: the mastectomy or the reconstructive surgery in 1993. Since Schwertfager was absent for most of 1992, as a result of the mastectomy and chemotherapy treatments, the Court assumes she is referring to the reconstructive surgery.

able jury could return a verdict for the nonmoving party." *Id.*

A plaintiff cannot defeat a defendant's properly supported motion for summary judgment without an affirmative presentation ·of specific facts showing a genuine issue, and may not merely rely on the general allegations of the pleadings. *See id.* A mere scintilla of evidence is insufficient to defeat a motion for summary judgment:

> [I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Id.* at 251, 106 S.Ct. at 2511 (quoting source omitted). In reviewing a motion for summary judgment the court focuses on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.* 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson, supra* ).

To determine whether there exists a genuine issue precluding summary judgment, federal courts employ the two-prong framework of shifting burdens established by the U.S. Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This framework places the initial burden on the moving party to establish the absence of a genuine issue as to any material fact. *See Allen,* 121 F.3d at 646 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The moving party may discharge this burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. In deciding whether the burden has been satisfied, the Court must view the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *See Allen,* 121 F.3d at 646 (citation omitted).

Once the movant has satisfied its burden, the burden shifts to the nonmoving party to present evidence sufficient to make a "showing that the jury could reasonably find for that party." *Allen,* 121 F.3d at 646 (citations omitted). Facts asserted by a summary judgment opponent must be regarded as true if supported by affidavit or other evidentiary material. *See Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir.1981). However, where the nonmoving party fails to prove an element essential to that party's case and on which that party will bear the burden of proof at trial, summary judgment is warranted. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.; see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116–17 (11th Cir.1993). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen,* 121 F.3d at 646.

On a motion for summary judgment, courts lack authority to determine the truth of a matter in dispute. Thus, the Court's task is merely to identify those disputed matters and to determine the degree of their importance to the pending action. *See id.*

### III. Discussion and Analysis

Schwertfager alleges that, due to her record of having a physical impairment and the City's perception of her as being disabled, she was the victim of discrimination. As a result of the City's unlawful conduct, Schwertfager was subjected to continuous harassment by her supervisors, Mazzella and Guidry. Unable to endure this abusive treatment, which allegedly caused her work environment to become

hostile, Schwertfager was forced to terminate her employment. Thus, the City's coercive behavior resulted in Schwertfager's constructive discharge.

Moreover, Schwertfager contends that the City had an obligation to reasonably accommodate her disability. A reasonable accommodation would have included: providing training on newly implemented computer and communications systems; allowing Schwertfager to remain at work while convalescing; permitting Schwertfager to take leaves of absences as needed, while retaining her in her regular position and at her regular salary; and withholding criticism of Schwertfager's inability to satisfy required assignments. For these violations, which Schwertfager avers were based on a perception that she was disabled, she seeks relief provided under the ADA.

### A. Retroactivity of the ADA

The City's first argument as to the propriety of summary judgment is based on a procedural defect apparent in Schwertfager's Complaint. Specifically, the City argues that all of the wrongful conduct allegedly committed by the City prior to the effective date of the ADA may not be considered in adjudicating Schwertfager's claims. Since the ADA did not become effective until July 26, 1992, all actions which occurred prior to this date are outside the scope of the ADA.[6]

Schwertfager counters that not all of the conduct complained of occurred prior to the effective date of the ADA. She further argues that she has pled a continuing violation, since the harassment to which she was subjected continued until the time of her constructive discharge.

█ The Eleventh Circuit has expressly addressed this issue, finding that "Title I [of the ADA] applies only to wrongful acts committed after the effective date of the ADA." *Gonzales v. Garner Food Servs., Inc.*, 89 F.3d 1523, 1525 (11th Cir.1996). Therefore, the ADA cannot be applied retroactively to conduct which Schwertfager alleges to have occurred prior to July 26, 1992, since "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994).

As an alternative to the preclusive effect of disallowing pre-enactment conduct to be considered in determining the City's liability for disability discrimination, Schwertfager argues that the City's harassment continued throughout her employment. Moreover, she claims that her cancer was not her sole disability, but rather she was additionally disabled by the reconstructive surgery necessitated by the mastectomy.[7] Since the reconstructive surgery and consequent difficulties occurred in 1993,

6. The ADA was enacted on July 26, 1990, but its provisions relating to employment discrimination did not take effect until July 26, 1992. *See* Pub.L. No. 101–336, § 108, 104 Stat. 327, 337 (1990).

7. Schwertfager also tries to interject a claim for a mental disability. She claims that, since her diagnosis in 1991, she has suffered from, and has been treated for, depression. She further claims that her physician regards her mental depression as permanent. The Court will not entertain this new theory, which was neither pled in the Complaint, nor included in Schwertfager's Charge of Discrimination filed with the EEOC. *See Moore v. City of Overland Park*, 950 F.Supp. 1081, 1086 (D.Kan.1996) (allegations of discrimination based on totally

different disabilities from the one mentioned in a charge of discrimination are not reasonably related to the charged allegations, and therefore, cannot be included in a subsequent federal lawsuit for failure to exhaust administrative remedies); *see also Wade v. Secretary of Army*, 796 F.2d 1369, 1377 (11th Cir.1986) (exhaustion of administrative prerequisites requires a "good faith effort by employee to cooperate with the agency and the EEOC and to provide all relevant, available information"). Moreover, Schwertfager has not indicated which major life activities, if any, were substantially limited by her depression. *See Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2205, 141 L.Ed.2d 540 (1998) (it is the plaintiff's duty to specifically plead the major life activities she believes to be impaired).

Schwertfager argues that the City's unlawful reaction to this condition falls within the scope of the ADA. Although the Court does not find Schwertfager's argument persuasive, since she has failed to establish that the ADA is applicable to her claims, the Court will not belabor the time-bar issue.

## B. The Purpose Behind the ADA

■ The ADA was enacted to eradicate discrimination against persons with disabilities and to ensure equality of treatment. 29 C.F.R. § 1630.1(a) (1998). In the employment context, the ADA was created to give qualified employees protection from discrimination based on their known or perceived disability.[8] The statute was not designed to give disabled persons the power to invoke affirmative action:

> Like the Civil Rights Act of 1964 that prohibits discrimination on the basis of color, religion, national origin, and sex, the ADA seeks to ensure access to equal employment opportunities based on merit. It does not guarantee equal results, establish quotas, or require preferences favoring individuals with disabilities over those without disabilities.

29 C.F.R. § 1630 app. at 345. Rather, the sole and express intent of the ADA is to provide equal, not preferential, opportunities to disabled persons. *See Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir.1998).

■ To be eligible for relief under the ADA, a plaintiff must satisfy the same evidentiary burdens demanded by similar statutes addressing claims of employment discrimination. A crucial ingredient in all actions alleging discriminatory treatment by an employer based on conduct proscribed by the ADA, is proof of discriminatory motive. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 325 n. 5, 97 S.Ct. 1843, 1854 n. 5, 52 L.Ed.2d 396 (1977). In establishing unlawful motive, "the ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In this case, the issue is whether the City *intentionally* discriminated against Schwertfager on the basis of a disability.

■ To establish a case of intentional discrimination, a plaintiff may rely on direct or circumstantial evidence. Therefore, a threshold determination whether the evidence produced by Schwertfager is direct or circumstantial evidence of discrimination must be made. The type of evidence before the Court, direct or circumstantial, dramatically affects the allocation of evidentiary burdens. If Schwertfager produces competent evidence of discriminatory intent, the City must prove by a preponderance of the evidence that the same employment decisions would have been reached even absent the discriminatory motive. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989); *Smith v. Horner*, 839 F.2d 1530, 1536 (11th Cir.1988). If the evidence relied upon by Schwertfager is circumstantial, the City's burden on rebuttal is to produce a legitimate, nondiscriminatory reason for the challenged employment decision. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This burden is merely one of production, not persuasion, and is exceedingly light. *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982).

■ Direct evidence is that which, if believed, proves the existence of a fact in issue without inference or presumption. *See Burrell v. Board of Trustees of the Ga.*

---

**8.** Title I of the ADA provides that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

*Military College,* 125 F.3d 1390, 1393–94 (11th Cir.1997); *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 643 (11th Cir.1998) (citing *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir. 1997)). Generally, direct evidence relates to the actions, statements, or biases of the person making the challenged employment decision. *See Trotter v. Board of Trustees of the Univ. of Ala.,* 91 F.3d 1449, 1453–54 (11th Cir.1996). If, however, the evidence presented is, by inference, subject to more than one possible meaning, it is not direct evidence and must be considered circumstantial evidence. *See Carter,* 132 F.3d at 643 (citing *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1082–83 n. 2 (11th Cir.1996)).

For cases alleging discriminatory intent based upon circumstantial evidence, courts adhere to the Supreme Court's burden-shifting analysis set forth in *McDonnell Douglas, supra.* Pursuant to this framework, a plaintiff must first establish a prima facie case of discrimination. Only if a plaintiff succeeds in satisfying all the elements of an actionable claim, does the burden shift, at which time, it is incumbent upon the defendant to rebut the plaintiff's claims by articulating a legitimate, nondiscriminatory reason for the adverse employment action of which the plaintiff complains—a reason worthy of credence. *See Carter,* 132 F.3d at 643. The defendant has the burden of production, and thus, does not have to persuade a court that it was actually motivated by the reason advanced. *See id.* Once the City satisfies this burden of production, in order to prevail upon her claims, Schwertfager must establish *both* that the proffered reason for the employment decision was false *and* that the real reason for the action was discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993); *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 441 (11th Cir. 1996). By so persuading the Court, Schwertfager satisfies the required burden of demonstrating by a preponderance of the evidence that she has been the victim of intentional discrimination. *See Carter,* 132 F.3d at 643.

. Applying these principles, the Court's examination of the evidence in the record reveals no direct evidence of disability-based disparate treatment. Schwertfager has not identified specific comments or incidents which can be considered unambiguous examples of discrimination. Absent direct evidence of discrimination, Schwertfager's claims must be examined under the *McDonnell Douglas* burden-shifting framework. Accordingly, to qualify for relief under the ADA, Schwertfager must first establish a prima facie case of disability discrimination by her employer.

### 1. Plaintiff's Claim of Disability Discrimination Under the ADA

A prima facie case of employment discrimination based on a disability under the ADA is established by demonstrating that Schwertfager: (1) has a disability; (2) is qualified, with or without reasonable accommodations, to perform the essential functions of her job; (3) identified for the City a reasonable accommodation; and (4) was unlawfully discriminated against because of her disability. *See Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir. 1997). Schwertfager must satisfy *all* elements of a prima facie case under the ADA in order to discharge her burden. The Court finds that she has failed to do so.

### a. Establishing a Disability Under the ADA

To satisfy the first element of a prima facie case of discrimination, Schwertfager must demonstrate that she is disabled. The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Harris v. H & W Contracting Co.,* 102 F.3d 516, 518–20 (11th Cir.1996). Merely having a physical impairment is insuffi-

**1358**

cient to be covered by the ADA. *See Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 911 (11th Cir.1996); *cert. denied,* —— U.S. ——, 118 S.Ct. 630, 139 L.Ed.2d 610 (1997). Rather, to constitute a disability, "the impairment [must] substantially limit one or more of the individual's major life activities." *Id.*

■ According to the Supreme Court, consideration of subsection (A) of the definition involves three steps. *See Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). The Court must first determine whether Schwertfager has an impairment. *See id.* Next, the Court must identify the life activity upon which she relies, and determine whether it constitutes a major life activity under the ADA. *See id.* Finally, by "tying the two statutory phrases together," the Court must determine "whether the impairment substantially limit[s] [Schwertfager's asserted] major life activity." *Id.* Determining whether a claimed impairment constitutes a disability and whether an identified endeavor constitutes a major life activity under the ADA are questions of law for the Court. *See id.*

The text of the ADA does not define "impairment." However, courts may seek guidance from the EEOC regulations issued to implement Title I of the ADA.[9] Pursuant to these regulations, a physical or mental impairment is:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, heroic and lymphatic, skin, and endocrine; or

(2) Any mental or physical disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h) (1998) (emphasis added). Not all covered impairments are enumerated within the regulation. It is meant to be "a representative list of disorders and conditions constituting physical impairments, including such diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, and ... drug addiction and alcoholism." *Bragdon,* 118 S.Ct. at 2202 (citation omitted).

Nor does the ADA define what constitutes "major life activities" and "substantial limitations." However, according to the EEOC's implementing regulations, "major life activities" are those "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also Bragdon,* 118 S.Ct. at 2205. An impairment is "substantially limiting" when the individual is:

(i) unable to perform a major life activity that the average person in the general population can perform; or

(ii) significantly restricted as to the condition, manner or *duration* under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (emphasis added).

If the asserted impaired function is not contained within the EEOC's enumerated exemplars of major life activities, courts must analyze the significance of the particular activity within the meaning of the ADA. *See Bragdon,* 118 S.Ct. at 2205 ("the touchstone for determining an activity's inclusion under the statutory rubric is its significance"). In determining whether a disability qualifies as a substantial limita-

---

9. Congress directed the EEOC to promulgate regulations to implement the provisions of Title I of the ADA. *See* 42 U.S.C. § 12116.

tion of a major life activity, courts are to consider: "(1) the nature and severity of the impairment; (2) *the duration or expected duration of the impairment;* and (3) *the permanent or long-term impact, or the expected permanent or long term impact of or resulting from the impairment.*" *Gordon,* 100 F.3d at 911 (emphasis added). Additionally, the Court may consider:

(4) the geographic area to which the individual has reasonable access;

(5) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is disqualified because of the impairment; and

(6) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical region from which the individual is also disqualified because of the impairment.

*Id.* at 912.

 Schwertfager has identified her disability as having contracted breast cancer and the resulting surgery she underwent to cosmetically repair her appearance. She urges that the "anatomical loss," which caused "cosmetic disfigurement," constitutes a physical impairment for purposes of ADA analysis. Because the cancer and surgery involved an anatomical loss and affected the lymphatic, skin, and endocrine systems, Schwertfager argues that she has a disability. However, not every illness qualifies as an ADA disability, even if the disease is life-threatening. *See, e.g., Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 190 (5th Cir.1996) (breast cancer, that required chemotherapy and treatment which caused the plaintiff to experience significant side effects, did not qualify as a disability); *Ennis v. National Ass'n of Bus. & Educ. Radio,*

*Inc.,* 53 F.3d 55, 60 (4th Cir.1995) (HIV and other sicknesses are not *per se* disabilities; courts must rely on specific evidence showing how the disease affected the plaintiff's daily activities). Determining whether an impairment meets the ADA's standard of "disability" must be evaluated in the context of how the claimed impairment affects the employee. *See, e.g., Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 166 (4th Cir.1997) ("the statute's individualized focus contemplates a case-by-case determination of whether a given impairment substantially limits one or more of the major life activities of the individual"); *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 164 (5th Cir. 1996) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). Thus, the Court must assess the significance of the particular activity allegedly impaired in light of the activity's importance to Schwertfager.

Schwertfager claims that, as a result of her reconstructive surgery, she was unable to care for, dress, and cook for herself. She properly represents that these are major life activities as recognized by the ADA. The Court concedes that these are activities of significant importance to the average member of society. However, the fact that the effects of Schwertfager's surgery caused temporary limitations on her ability to perform daily, routine functions is not determinative.

 First, Schwertfager has not produced any evidence that she was incapacitated in any way—either at work or in her daily activities. She has not presented evidence that she reported to the hospital on a daily basis to have her bandages removed and replaced. Nor has she proffered evidence, other than her own affidavit and testimony, that she was unable to perform this activity herself.[10] "[T]his

---

10. To the contrary, Schwertfager states that her doctors advised her to return to work as part of the rehabilitative process. *See* Schwertfager's Affidavit, at ¶ 6.

sort of conclusory allegation, unsupported by facts, will not suffice to overcome a well-supported Motion for Summary Judgment." *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1531 (S.D.Fla.1995).

Second, "[p]ermanency ... is the touchstone of a substantially limiting impairment." *Burch v. Coca–Cola Co.*, 119 F.3d 305, 316 (5th Cir.1997). Again, Schwertfager offered no evidence that, as a result of her breast cancer or reconstructive surgery, she suffered from any substantially limiting impairment of a significant duration. *See id.* Temporary impairments have not been held to qualify as disabilities. *See id.; see also* 29 C.F.R. § 1630.2(j), App. ("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities"). There is no evidence that Schwertfager was unable to perform her job responsibilities. To the contrary, Schwertfager has repeatedly urged that she was "ready, willing and able" to work as an Administrative Assistant II in the City's Utilities Department. Moreover, she has never stated that she had any physical limitations beyond a five-month period subsequent to the reconstructive surgery. Accordingly, the Court finds that Schwertfager did not have a disability at the time the allegedly discriminatory conduct occurred. *See Burch*, 119 F.3d at 317.

Neither has Schwertfager demonstrated a record of disability. Schwertfager has not produced any evidence that the limitations placed on her asserted major life activities were documented in her personnel file. *See, e.g., Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996).[11] Merely having a record of hospitalization is insufficient to establish that Schwertfager had a record of a substantially limiting impairment. *See Burch*, 119 F.3d at 317 (citing several courts and cases which found "nonsensical" the proposition that any hospital stay would be sufficient to evidence a record of impairment) (cita-

tions omitted). The ADA's implementing regulations state that having a record of impairment "is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." 29 C.F.R. ¶ 1630.2(k), App. The City presented an affidavit of Arthur Lee, the City's Human Resources Director. *See* the City's Appendix, at Tab 6. Lee's affidavit states that nothing in Schwertfager's personnel file has ever indicated that she was substantially limited by a disability, either in her ability to perform her job or in any other respect. *See id.* Lee's Affidavit, at ¶ 3. Schwertfager does not present any evidence to counter that affidavit. Therefore, there is no evidence that the City relied on such a record.

Nor has Schwertfager demonstrated that the City "regarded" her as disabled. The ADA covers adverse treatment as a result of an employer's perception that an employee is impaired. *See* 29 C.F.R. § 1630.2(1). A person is regarded as disabled where she:

(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by her employer as constituting such limitation;

(2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) has no illness or malady defined by the EEOC as a physical or mental impairment but is treated by her employer as having a substantially limiting impairment.

*Id.* The perceived impairment "must be substantially limiting and significant." *Gordon*, 100 F.3d at 913. To be significant, the impairment must be "viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Id.* Including mere perception within the ADA's proscribed conduct is consistent with the stat-

---

**11.** Although Schwertfager pled that she "had a record of having physical impairments," she does not address this issue in opposing Defendant's Motion for Final Summary Judgment.

ute's focus on the effect an employee's impairment has on the attitude of others. *See id.* (the provisions of the ADA are intended to combat the "archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities").

Schwertfager insists that the City tried to oust her from her position as Administrative Assistant II because it knew or perceived her to be disabled. The intent of the ADA is to "enable disabled persons to compete in the workplace based on the same performance standards and requirements that employers expect of persons who are not disabled." *Malewski v. NationsBank of Fla., N.A.*, 978 F.Supp. 1095, 1102 (S.D.Fla.1997) (citation omitted). It should not be interpreted as creating a double standard of treatment among employees.

Schwertfager must show that there is a genuine issue of material fact whether the City regarded her as having a disability. To make this determination, the focus is drawn to "the interactions and perceptions of the persons interacting or working with [Schwertfager]." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir.1996). "[T]he mere fact that [the City was] aware of [Schwertfager's] impairment is insufficient to demonstrate either that [the City] regarded [her] as disabled or that that perception caused the adverse employment action." *Id.*

Viewing the evidence in the light most favorable to Schwertfager, the Court finds no substantiation that the City, including Schwertfager's immediate co-workers and supervisors, regarded her as disabled. The only evidence Schwertfager presents is her own testimony, by way of affidavit.[12] This testimony shows that, even under Schwertfager's version of the facts, there exists no probative evidence that the City acted upon the perception that she was disabled. Schwertfager merely testified that "[the City] indicated a dissatisfaction with [Schwertfager's] work performance." Schwertfager's Affidavit, at ¶ 5. She believes that the City fabricated this dissatisfaction, because, prior to her diagnosis and surgery, she had never received complaints about her work product. *See id.*

Accepting this assertion in a light favorable to Schwertfager, it is insufficient to show that she was regarded as disabled, because it does not show that the City perceived her as "substantially limited" in a major life activity. An employer cannot be deemed to "regard the employee as disabled simply by finding the employee to be incapable of satisfying the singular demands for a particular job." *Marschand v. Norfolk & Western Ry. Co.*, 876 F.Supp. 1528, 1540–41 (N.D.Ind.1995), *aff'd*, 81 F.3d 714 (7th Cir.1996).

Credible evidence in the record demonstrates that the City expected Schwertfager to fulfill her job requirements *because* her supervisors believed Schwertfager had recovered from any limitations which she had formerly asserted and for which she was provided leave. Schwertfager has testified that her doctors advised her to return to work without restriction. She has never stated that she could not perform any of her work-related tasks.

Moreover, in the performance appraisal for the period February 1993 through February 1994, Mazzella stated that "now that [Schwertfager] has recovered from surgery, [he] expect[ed her] attendance to dramatically improve." *See* the City's Appendix, at Tab 4. Significantly, Schwertfager did not object to this expectation when responding in writing to her appraisal.

---

12. Schwertfager's assertions in her deposition are even more fatal to her claim of perception. She testified that "[t]he seeds of suspicion were planted" when the City aggressively urged her to go home while undergoing the chemotherapy treatments. *See* Schwertfager's Deposition, at 80. She "supposed" that, since Barden was assigned to fill in, there was no hurry for Schwertfager to return to work. *See id.* She believed that, since the Department was dominated by males, "[i]t's not comfortable to be around a woman who just [had a breast removed]." *Id.* Schwertfager concedes that she has no substantiation for these suspicions; instead, "it was a feeling" she had at that time. *See id.* at 81.

*See id.* This supports the inference that the City no longer perceived Schwertfager to be limited in her abilities to perform as an Administrative Assistant II.

Since Schwertfager has not established that she is disabled, has a record of a disability, or that the City perceived her as being disabled, she has failed to satisfy the first element of a prima facie case of discrimination under the ADA. For this reason, alone, summary judgment in favor of the City is warranted.

### b. *Determining Whether Plaintiff Is "Qualified" Under the ADA*

Even if the Court was persuaded that Schwertfager had a disability, she would still have to satisfy the second prong of a prima facie case of discrimination under the ADA: that she was qualified to perform the essential functions of her job, either with or without a reasonable accommodation. Schwertfager has presented no evidence to support her assertion that she could perform all of the functions of an Administrative Assistant II required by the City. To the contrary, evidence in the record reflects that Schwertfager had never been found qualified as an Administrative Assistant II while assigned to the Department.

To be a qualified individual with a disability, the employee must be "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires...." 42 U.S.C. § 12111(8). Congress included the term "essential functions" to "ensure that employers can continue to require that all applicants and employees, including those with disabilities, are able to perform the essential, i.e., the non-marginal functions of the job in question." *Gonzales,* 89 F.3d at 1527 (quoting source omitted). Therefore, ADA protection is afforded only to employees who are capable of or who are performing the essential functions of the job as defined by the employer. *See id.*

It is axiomatic that employees must be "able to meet all of a [job]'s requirements in spite of [a disability]." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Courts have consistently held that the "ability to appear for work ... and to complete assigned tasks within a reasonable period of time" is essential to any job. *See, e.g., Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir.1996) (quoting *Carr v. Reno,* 23 F.3d 525, 530 (D.C.Cir.1994)); *Tyndall v. National Educ. Centers, Inc.,* 31 F.3d 209, 213 (4th Cir.1994) (an employee "who does not come to work cannot perform any of his job functions, essential or otherwise"). Moreover, there is ample support for the notion that regular and predictable attendance is an especially essential function of a *government* job. *See, e.g., Carr,* 23 F.3d at 530 ("an essential function of any *government* job is an ability to appear for work") (emphasis added); *Law v. United States Postal Serv.,* 852 F.2d 1278, 1279–80 (Fed.Cir.1988) ("an agency is inherently entitled to require an employee to be present during scheduled work times ... an employee's absence [can be] disruptive to the agency's efficient operation").

Schwertfager's work record while an Administrative Assistant II in the Utilities Department shows, without any doubt, that she was unable to perform the essential functions of her job due to absenteeism. Indeed, she concedes that she was unable to fulfill her responsibilities and self-set goals "due to extensive absences a greater part of the year." The City's Appendix, at Tab 4. Schwertfager also stated that she had not attended any courses, nor engaged in any professional activities or self-improvement actions since the February 1992 to February 1993 evaluation period because "absenteeism prevented any of these activities." *Id.*

It is clear that the City considered attendance to be an essential function of Schwertfager's position as an Administra-

tive Assistant II. In a memorandum from Guidry to the City Manager, requesting an extension to Barden's temporary reassignment, Guidry stressed "the need for someone to coordinate the work effort of the clerical staff on a daily basis." The City's Appendix, at Tab 5. This responsibility was "*essential* to the continued efficient functioning of [the Department]." *Id.* (emphasis added). Subsequently, when Guidry sought another extension of Barden's reclassification, he reiterated "that the daily delegation of work to the clerical staff is *critical* to the smooth functioning of [the Department]." *Id.* (emphasis added).

An employer's identification of a position's "essential functions" must be given some deference under the ADA. *See* 42 U.S.C. § 12111(8) ("consideration shall be given to the employer's judgment as to what functions of a job are essential"). Schwertfager had been absent from work 536 hours during the 1992–1993 appraisal period and 285.5 hours during the 1993–1994 appraisal period. By her own admission, Schwertfager was unable to perform the essential functions of her position. Therefore, Schwertfager cannot be considered a qualified individual with a disability under the ADA.

Additionally, Schwertfager has not shown that she was ever determined "qualified" as an Administrative Assistant II in the Department. She was assigned to the Department in September 1990. Prior to her first evaluation, she had already begun her extended medical leave. As reflected in her first evaluation as an Administrative Assistant II in the Utilities Department, she was not performing as expected. Her subsequent evaluation in 1994, showed little, if any, improvement over her prior appraisal. Thus, Schwertfager has not shown that she ever performed her job to the satisfaction of her supervisors. *See Ennis,* 53 F.3d at 61–62 (an ADA plaintiff

cannot prove that she satisfies her employer's legitimate expectations when her work is substandard). Although Schwertfager claims that, since commencing her employment with the City in 1983, she had never received a substandard appraisal, she had not been the Administrative Assistant II in the Utilities Department during those prior evaluations.[13] Thus, she cannot show that she was qualified to perform the essential functions of the employment position that she held or desired. *See* 42 U.S.C. § 12111(8).

The overwhelming and uncontroverted evidence shows that Schwertfager was neither able to perform, nor performing, the essential functions of her job. Her evaluations indicate low performance ratings throughout the entire time that she was the Administrative Assistant II with the Department. Although Schwertfager may dispute the City's appraisal of her work, she has presented no evidence that she received unsatisfactory evaluations because she was considered disabled, rather than because of the stated reasons that she had contributed little and had performed poorly from 1992 through 1995. Accordingly, she is neither qualified as an Administrative Assistant II in the City's Utilities Department, nor qualified for protection under the ADA. In addition to failing to satisfy the first prong of a prima facie case of discrimination, Schwertfager's failure to prove the second element under the ADA further justifies judgment in favor of the City.

c. *Discerning the Reasonableness of an Accommodation*

Even assuming that Schwertfager was a *qualified* individual with a *disability,* she has not adduced evidence to establish the third prong of a prima facie case of ADA discrimination. Under the ADA, an em-

---

**13.** Moreover, Schwertfager has not produced any of her prior performance appraisals. Instead, she asks the Court to rely on her representations that, prior to her diagnosis and surgery, she had always received above average evaluations while employed by the City.

As previously stated, Schwertfager's assertions are completely devoid of evidentiary support and cannot be given greater weight than evidence which is in the record before the Court.

ployer may be liable for "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A); *see also Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). A reasonable accommodation includes:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) *job restructuring,* part-time or modified work schedules, *reassignment to a vacant position,* acquisition or modification of equipment or devices, . . . and other similar accommodation for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis added). "[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997). In the Eleventh Circuit, the scope of an employer's duty to reasonably accommodate a disabled employee is not triggered unless the employee specifically demands an accommodation. *See Gaston v. Bellingrath Gardens & Home, Inc.,* Case No. 98–6637, 1999 WL 68111, at *2–3 (11th Cir. Feb. 12, 1999).

 Once the employee proves that a reasonable accommodation exists, the employer may present evidence that its employee's requested accommodation imposes an unreasonable hardship. *See Willis,* 108 F.3d at 286; *Morisky,* 80 F.3d at 447. For purposes of Title I of the ADA, employers are obligated only to provide a reasonable accommodation which enables a disabled employee to perform the essential requirements of the employee's job. *See Willis,* 108 F.3d at 283. An employee is not entitled to her preferred accommodation, only one that is reasonable. *See Stewart,* 117 F.3d at 1285–86 (citations omitted). The ADA seeks only to provide qualified disabled employees with opportunities equal to their non-disabled co-work-

ers; it does not demand that employers give disabled employees priority in hiring and reassignment over non-disabled employees. *See Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995) (the ADA "prohibits employment discrimination against qualified individuals with disabilities, no more and no less."). For this reason, employers are obligated only to provide "alternative employment opportunities reasonably available under the employer's existing policies." *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987).

The only accommodation which Schwertfager might have requested was to receive remedial training on computer systems and operations that were implemented during her extended leave of absence. However, there is no probative evidence in the record to dispute that Schwertfager's sole request for an accommodation, if made, was not provided.

Even before Schwertfager took leave for her cancer surgery and treatment, the Department was entertaining methods to become more efficient. The evolution of the Department's facilitating systems largely relied on computer technology. As the supervisor of the Department's clerical staff, Schwertfager was increasingly required to develop her computer skills, of which she had no discernable ability. To accommodate Schwertfager upon her return, the City provided numerous means of assisting her. Barden was permitted to remain as acting Administrative Assistant II in order to relieve Schwertfager of her daily responsibilities, which would allow her to learn the new systems. Staff were directed to provide individual assistance to Schwertfager to train her in their respective areas of responsibility. A clerical staff member, Doreen Muqaj, was assigned to provide consultation to Schwertfager on a weekly basis. Schwertfager was also instructed to attend, and was given the opportunity to attend, computer and other systems classes. She admits

that she attended classes on Wordperfect and Lotus.

 It is readily apparent that the City provided, or made available, the reasonable accommodations requested by Schwertfager. Nevertheless, despite these accommodations, Schwertfager did not demonstrate that she availed herself of these opportunities. "Nothing in the text of the reasonable accommodation provision [of the ADA] requires an employer to wait an indefinite period for an accommodation to achieve its intended effect." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995). Under the ADA, employers are not required to eliminate essential functions of the job. *See Rio v. Runyon*, 972 F.Supp. 1446, 1457 (S.D.Fla.1997). The City's decision to cease the accommodations and, instead, to reassign Schwertfager to a non-supervisory position which she had formerly shown she was able to perform, did not violate the ADA, because the City's original accommodations exceeded the level that the law requires. *See Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir.1997).[14]

Schwertfager was given ample accommodation to achieve the qualifications required to perform the essential functions of her position as an Administrative Assistant II. She was provided assistance, training, and paid her full salary for an extend-ed period of time. Even after she was reassigned to a position of less responsibility, she retained her title and salary, though her job functions were greatly reduced. The Court finds that the City's efforts to accommodate Schwertfager were extraordinary. In contrast, Schwertfager failed to make a facial showing that the City's accommodations were not reasonable.

Schwertfager's failure to prove that she was denied a reasonable accommodation is fatal to her burden of establishing a prima facie case under the ADA. *See Willis*, 108 F.3d at 283. Under these circumstances, no reasonable juror could find in favor of Schwertfager on this issue. Therefore, the City is entitled to summary judgment on Count I of the Complaint.[15]

### 2. *Plaintiff's Claim of Harassment*

In Count II of the Complaint, Schwertfager attempts to state a cause of action for hostile environment disability harassment. She argues that there is a factual dispute whether the City intentionally created a hostile environment in an attempt to constructively discharge her. The Court disagrees.

As a threshold matter, the Court is unaware of any circuit courts which have definitively recognized a hostile environ-

**14.** In *Holbrook*, the city accommodated a visually-impaired police detective for a significant period of time with respect to the essential functions of his job, which he could not perform without assistance. The Eleventh Circuit found that the accommodations exceeded those required under the ADA, and that a decision to discontinue accommodations does not give rise to liability for failure to reasonably accommodate. *See Holbrook*, 112 F.3d at 1528. Moreover, the Court finds that the City provided an additional reasonable accommodation by not terminating Schwertfager for her poor attendance, but instead, reassigned her to a position to which she was qualified and for which attendance was not as essential as that of an Administrative Assistant II.

**15.** Not having established a prima facie case, Schwertfager never shifted the burden to the City to articulate a legitimate, non-discrimina-tory reason for its decisions concerning her. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Therefore, although the record reveals several legitimate reasons existed to relieve Schwertfager of her supervisory duties, such an analysis is unnecessary to the disposition of this issue. Moreover, a crucial component in deciding if discrimination can be inferred is whether the nondisabled employees who were treated more favorably were similarly situated to the disabled employee. *See Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir.1995). Although Schwertfager asserts that she was treated differently from other similarly situated nondisabled employees, her claim is not supported by the record. Specifically, Schwertfager has not identified one nondisabled employee who had failed to perform the essential functions of their job, but who did not receive a poor evaluation.

ment claim predicated on violations of the ADA. However, several courts have proceeded on the assumption that the ADA creates a cause of action for hostile work environment, while avoiding the issue of whether such a claim exists. *See, e.g., Wallin v. Minnesota Dep't of Corrections,* 153 F.3d 681, 687–88 (8th Cir.1998) (assuming without deciding that a hostile environment claim under the ADA exists); *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 563 (5th Cir.1998) (noting that various district courts have assumed the existence of such a claim, but stating that its decision "should not be cited for the proposition that the Fifth Circuit recognizes or rejects an ADA cause of action based on hostile environment harassment"). Following the practice of other district courts, the Southern District of Florida has, likewise, presumed the existence of an ADA hostile environment claim. *See Rio,* 972 F.Supp. at 1455 (because "various district courts have found hostile environment claims actionable under the ADA.... For purposes of this action, therefore, the Court will assume that a disability-based hostile environment claim is actionable").

 Those courts which have proceeded under the assumption that an ADA hostile environment claim could be actionable, have analyzed the plaintiffs' claims under the same rubric used in assessing hostile work environment claims brought pursuant to Title VII. *See McConathy,* 131 F.3d at 563; Rio, 972 F.Supp. at 1459. Accordingly, Schwertfager must establish that: (1) she belongs to a protected group (i.e., she is disabled under the ADA); (2) she was subjected to unwelcome harassment; (3) the harassment to which she was subjected was based on a disability; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the City knew or should have known of the harassment, but failed to take prompt, remedial action. *See id.* Additionally, to be actionable, the harassment must be so severe and pervasive as to "ha[ve] the purpose or effect of unreasonably interfering with [Schwertfager's] work performance or

creating an intimidating, hostile, or offensive environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *see also Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982).

 Schwertfager cannot overcome summary judgment on her ADA hostile environment claim. First, she cannot satisfy the elements necessary to sustain a cause of action for hostile environment. Because she failed to establish that she is a qualified individual with a disability under the ADA, she has not established that she is a member of a protected group. Thus, she cannot meet the first and third prongs of a prima facie case of disability-based hostile environment.

 Second, Schwertfager has not shown that her work environment was objectively abusive. A hostile environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). "This standard takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury.... The very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees ... offends [the ADA's] broad rule of workplace equality." *Id.*

 In order to be actionable, the environment must be both objectively offensive—one that a reasonable person would find hostile or abusive—*and* subjectively offensive—one that the victim in fact did perceive to be so. *See Harris,* 510 U.S. at 21–22, 114 S.Ct. at 370–71. The demanding standards for judging abusive working environments were designed to prevent civil rights statutes from becoming "general civility code[s]." *Oncale v. Sundowner*

*Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Applied judiciously, these standards will "filter out complaints attacking 'ordinary tribulations of the workplace.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) (quoting source omitted).

Factors considered in determining whether an environment is hostile include the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, and whether it *"unreasonably interferes with an employee's work performance."* *Harris*, 510 U.S. at 23, 114 S.Ct. at 371 (emphasis added). Thus, to overcome summary judgment, Schwertfager must show that a reasonable juror could conclude that the conduct complained of constituted actionable disability harassment in violation of the ADA. On this record, Schwertfager has failed to make this showing.

Schwertfager contends that she received blunt criticism and was told that she was "useless." However, she has not shown that these remarks were disability-based, rather than a reaction to her work performance. *See Rio*, 972 F.Supp. at 1459–60. Decisions based on reasons independent of an employee's disability, while they may correlate with a disability, are not actionable under the ADA. *See Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197 (7th Cir.1997) ("a personnel action that is based on a disability-related cause is not itself an action because of a disability"). Even assuming that the objectionable conduct was frequent, Schwertfager has not shown that it was sufficiently severe, physically threatening, or humiliating so that her conditions of employment were altered or her environment was abusive. *See Harris*, 510 U.S. at 23, 114 S.Ct. at 371. Harsh words and "cold-shouldering" cannot be elevated to the level of an actionable workplace offense. *See McConathy*, 131 F.3d at 564.

Moreover, the Supreme Court requires that the factual support of the five elements be both subjectively *and objectively* abusive in order to constitute actionable harassment. *See Harris*, 510 U.S. at 21–22, 114 S.Ct. at 370. Schwertfager has not presented objective evidence to support her claim that her work environment was hostile. While she may well have been subjectively offended, this conclusory, subjective perception, without more, does not provide the quantum of proof necessary for sustaining her claim. Schwertfager contends that the City chastised her in front of other employees and humiliated her in the presence of her subordinates. However, over the long history of this case, Schwertfager has not gone so far as to supply this Court with even a single sworn affidavit to *objectively* substantiate the elements of these allegations. Having failed to present a prima facie case requiring rebuttal by the City, Schwertfager cannot overcome summary judgment on Count II of her Complaint for disability-based hostile environment.

### 3. *Plaintiff's Claim of Constructive Discharge*

Schwertfager alleges that the adverse employment action arising from her disability and hostile environment was a constructive discharge. To successfully establish a claim of constructive discharge, Schwertfager must demonstrate "that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433–34 (11th Cir.1997). She must show more than the working conditions were not to her liking; she must prove that the alleged intolerability of working conditions resulted from acts of discrimination. *See Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242 (5th, Cir.1993). Unless the employer is given sufficient time to remedy the situation, a constructive discharge will generally not be found to have occurred. *See Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996).

■ Schwertfager has not shown that she informed the City of her belief that she was being harassed and discriminated against on account of a disability. None of her written responses to her performance appraisals indicated that she was adversely affected by the behavior of her supervisors or the conditions of her work environment. Although she claims that the City overloaded her with assignments it knew she would not be able to complete, the assignments listed in her performance appraisal merely reflected work which she then had pending for completion.

Moreover, Schwertfager never utilized the relief provided through the City's grievance process. As part of her duties as an Administrative Assistant II, Schwertfager was responsible for issuing counseling forms and handling employee complaints and grievances for the Department. Schwertfager was required to be familiar with these processes. *See* the City's Appendix, at Tab 7. Since she did not give the City sufficient time to remedy the situation by bringing her complaints to its attention, Schwertfager has not shown that a constructive discharge occurred. *See Kilgore*, 93 F.3d at 754. Thus, the City is entitled to summary judgment on Count III of the Complaint.

### IV. Conclusion

Although factual disputes preclude summary judgment, the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of nothing "more than a repetition of [her] conclusional allegations," summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981).

Schwertfager has not proffered sufficient evidence to rebut the City's showing of the absence of any genuine issues of material fact. Moreover, by failing to satisfy the elemental proof necessary to indicate actionable conduct under the ADA,

Schwertfager has failed to establish a prima facie case of disability-based discrimination. She did not show that she had a disability and was, therefore, a member of the class protected by the ADA. She further failed to show that, at the time she was relieved of her supervisory duties, she was meeting the City's legitimate expectations in performing the essential functions of her job. Thus, she failed to raise any reasonable inference of discrimination.

Because Schwertfager failed to present a prima facie case of discrimination, the Court was not required to examine the City's reasons for its employment decisions nor determine whether those reasons were a pretext for discrimination. However, even if Schwertfager had succeeded in making out a prima facie case of discrimination, there is ample evidence that the City had legitimate, nondiscriminatory reasons for its decisions: Schwertfager had not been fulfilling the requirements of her job. This is a legitimate, nondiscriminatory reason, which has not been dispelled by evidence of pretext. Nevertheless, in reviewing the record as a whole, the Court still finds by merely opposing the City's motion with unsubstantiated allegations of discrimination, as recited in her pleadings, Schwertfager's approach is legally insufficient to controvert the City's legitimate proof that no discrimination occurred and that no genuine issues of material fact exist.

While not insensitive to Schwertfager's medical misfortune, the Court is required to decide this case based on the law. *See Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir.1995) (courts must construe the ADA to assure equal opportunities for disabled employees, and not for the purpose of obtaining leverage against employers or sympathy from a jury). "The ADA is not a job insurance policy, but rather a congressional scheme for correcting illegitimate inequities the disabled face." *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 934 (7th Cir.1995).

The case law interpreting the ADA leads to the conclusion that, because the evidence established as a matter of law that the City did not make decisions regarding Schwertfager based on a disability, the City is entitled to summary judgment on Schwertfager's claims. Accordingly, Defendant's Motion for Final Summary Judgment is granted and this case is dismissed.