[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2008
THOMAS K. KAHN
CLERK

No. 07-15818
Non-Argument Calendar

_____

D. C. Docket No. 06-00780-CV-D-N

RANDY JONES,

                                              Plaintiff-Appellant,

                              versus

ALABAMA POWER COMPANY,

                                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(June 23, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Randy Jones appeals the district court's order granting summary judgment in

favor of his former employer, Alabama Power Company ("Alabama Power"), on his claims of disparate treatment (race) and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and 42 U.S.C. § 1981.[1]  After review, we affirm.[2]

## I. BACKGROUND

### A.    Jones's Conduct

Jones, who is white, worked at Alabama Power as a lineman.  In September 2005, during an investigation of an unrelated complaint against Jones, Alabama Power discovered that Jones had reconnected a customer's power without authorization.

An investigation revealed that Alabama Power had cut off the customer's electric service for non-payment.  The customer, Clay Avery, was employed by Jones in an independent sidebusiness.  After a "cut order" was issued, Alabama Power meter reader Lucious Cobbs, who is African American, went to Avery's home and disconnected the electrical service.

---

[1]Claims under Title VII and § 1981 "have the same requirements of proof and present the same analytical framework."  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Thus we address Jones's discrimination and retaliation claims together.

[2]We review a district court's grant of summary judgment de novo.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law.  Id.

After Cobbs left, Avery's wife called Jones for a loan to pay the outstanding bill. Jones called Cobbs and said that he would "take care of" Avery's account balance and to reconnect the meter. Cobbs then erased the meter reading on the "cut order" so that another employee would not be sent out to reconnect the service after the balance was paid.

Jones reconnected Avery's service without getting an order to do so. Jones also gave Avery the money to pay the unpaid bill. However, Jones did not give the Averys the money to pay the $50 reconnect fee and $85 deposit. Avery's wife told Alabama Power's investigator that, at the time, Jones told her that he was saving her $135 and she should not tell anyone because he would lose his job. Cobbs told the investigator that he believed that when Jones told him he was "taking care of" the Avery account, Jones meant that he would pay not only the unpaid bill, but also the reconnect fee and deposit.

Jones admitted to the investigator that reconnecting Avery's electrical service without authorization was improper, as follows:

> In May 2005, Clay Avery or his wife called me to tell me that their power had been disconnected. I called Lucious Cobbs and he confirmed that it had been. I told Lucious I would get their power back on. I do not recall discussing Lucious'[s] paperwork with him. I think I asked Lucious how much money Clay needed. I took Clay a check and he was able to pay his bill with that. I did reconnect their power and seal the box with my seal. I cannot recall if I told Clay and his wife that I had saved them $135.00. I do realize that I reconnected

3

power without the direction of the business office and I know I should not have done that. I was trying to help one of my employees.

The investigator prepared a report recounting the statements given by Avery's wife, Jones and Cobbs.

**B.      Disciplinary Action**

Alabama Power's company policy provided for three levels of disciplinary action prior to termination. However, the policy authorized immediate termination "when an employee commits an infraction so serious that progression through the formal levels of discipline is not warranted." Among the misconduct that would result in immediate termination was "[t]ampering with an electric service account or meter."

Greg Clemons, a supervisor in Jones's chain of command, reviewed the investigation report, talked with Jones's direct supervisor and decided that Jones's conduct violated company policy. Specifically, Clemons determined that Jones's reconnection of Avery's service without a work order constituted "tampering" with a meter or electric service, which was grounds for immediate termination. Accordingly, Clemons decided Jones should be terminated. In making his decision, Clemons considered the fact that Alabama Power had placed Jones on level-three disciplinary probation for violating company policy in the past. However, this was not the primary reason for Jones's termination.

4

Although Jones was terminated, Cobbs was not.  Terry Weaver, a supervisor in Cobbs's chain of command, interviewed Cobbs.  Based on this interview, Weaver determined that Cobbs had altered company documents without authorization and placed him on level-three disciplinary probation.  Weaver noted that Cobbs had not received any kind of personal benefit by altering the order and that Cobbs had not had a relationship with Avery.  Weaver also considered Cobbs's previous job performance.  Unlike Jones, Cobbs had never before been disciplined by Alabama Power.

In July 2006, after he was terminated and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Jones completed an online profile on Alabama Power's website and selected employment criteria to receive e-mail notifications when positions became vacant.  However, Jones did not apply for any positions with Alabama Power after his termination.

## C.    District Court Proceedings

Jones filed this action alleging that Alabama Power terminated him based on his race in violation of Title VII and § 1981 and had retaliated against him for filing a charge with the EEOC by failing to hire him for other positions at Alabama Power in violation of Title VII.  Following discovery, Alabama Power moved for summary judgment, which the district court granted.

As to the disparate treatment claims, the district court concluded that Jones failed to establish a prima facie case because Jones and Cobbs were not similarly situated employees. Alternatively, the district court determined that Jones failed to show that Alabama Power's legitimate, nondiscriminatory reason for firing Jones was pretext. As to the retaliation claim, the district court concluded that Jones failed to establish as an element of the prima facie case that he had reapplied for a position at Alabama Power after his termination.

Jones filed this timely appeal.

## II. DISCUSSION

### A. Disparate Treatment Claim

Where, as here, the plaintiff relies on circumstantial evidence of discrimination, we evaluate whether summary judgment is appropriate using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981). Under the McDonnell Douglas test, the plaintiff must carry the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824. To make out a prima facie case of disparate treatment discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an

adverse employment action; (3) the employer treated similarly situated employees outside the protected class more favorably; and (4) he was qualified to do the job. Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006).

The third element is the only one at issue on appeal. Jones argues that Cobbs is a similarly situated employee who was treated more favorably and thus is an appropriate comparator. "When a [plaintiff] alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" Id. (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Here, although Jones and Cobbs were both involved in the reconnection of the Averys' electrical service, they were not engaged in the same or similar misconduct. Cobbs altered a company document, by erasing the meter reading from the "cut order.' It is undisputed that this misconduct is not an offense requiring immediate termination under Alabama Power's disciplinary policy. Further, the investigator's report of the incident indicates that Cobbs altered the order only after Jones assured him he would give the Averys the money to reconnect the electrical service, which Cobbs believed would include the reconnect fee and deposit. Cobbs erased the meter reading only so that another lineman

would not be sent out unnecessarily. In other words, the investigator did not find evidence that Cobbs erased the meter reading to hide the fact that the Averys were avoiding paying the reconnect fee and deposit. In deciding that Cobbs would be placed on level-three probation and not fired, Weaver, Cobbs's supervisor, considered the fact that Cobbs had no relationship to the Averys and did not gain from his actions, as well as his lack of a prior disciplinary record.

Jones, in contrast, "tampered" with the meter, an offense that is immediately terminable under the disciplinary policy.[3] Alabama Power's investigation uncovered evidence that Jones, unlike Cobbs, understood that by reconnecting the Averys' meter without a work order he was helping the Averys avoid paying the reconnect fee and deposit and that he could be fired if he was caught. Specifically, Avery's wife told the investigator that Jones said he was saving her $135 and not to tell anyone because he could lose his job. In deciding to terminate Jones, Clemons, Jones's supervisor, considered not only that the offense called for termination under the disciplinary policy, but also that Jones had a relationship with the Averys and had previously been placed on level-three probation for

_____

[3]Jones takes issue with Alabama Power's determination that by reconnecting the meter without a work order he "tampered" with the meter within the meaning of the disciplinary policy. However, an employer has the "right to interpret its rules as it chooses" and "make determinations as it sees fit under those rules." Maniccia, 171 F.3d at 1369 (quotation marks omitted). Jones presented no evidence that any other employee reconnected a meter without a work order and was not found to have "tampered" with a meter.

violating company policy.

In sum, Jones and Cobbs engaged in different acts of misconduct that called for different discipline under Alabama Power's policy. The results of Alabama Power's investigation suggested that Jones's misconduct was more serious than Cobbs' misconduct in that Jones had acted with intent to help the Averys avoid paying the reconnect fee and deposit, while Cobbs had not. These facts, coupled with the fact that Jones had a past disciplinary record, establish that Jones and Cobbs are not "similarly situated" for purposes of establishing a prima facie case of disparate treatment discrimination.[4]

## B.    Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must present evidence that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). To satisfy the adverse employment action requirement, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). A materially adverse action is one that

---

[4]Because we conclude that Jones failed to establish a prima facie case of race discrimination, we do not address whether Jones presented evidence of pretext.

9

"well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quotation marks omitted).

An employer's failure to recall or rehire an employee is "undoubtedly an adverse employment action" where the employee reapplied for the position after termination. See Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1135, 1141 (5th Cir. Unit A Sept. 1981).[5] If the employer uses formal procedures to announce positions and identify candidates, the plaintiff cannot make out a prima facie case unless he shows that he applied for the position. See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005). Furthermore, under such circumstances, "[a] general interest in being rehired without submitting an application" is insufficient to satisfy the application requirement. Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003) (applying application requirement to age discrimination claim).

Jones argues that Alabama Power failed to rehire him in retaliation for filing an EEOC complaint. The parties do not dispute that Jones engaged in statutorily protected conduct when he filed his EEOC charge of race discrimination. However, because it is undisputed that Jones did not reapply for any positions with

_____

[5]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions handed down by the Fifth Circuit prior to the close of business on October 1, 1981.

Alabama Power after his termination, Jones cannot show that he suffered a materially adverse employment action and thus cannot make out his prima facie case.

Jones completed an online profile at Alabama Power's website so that he could receive e-mails regarding open positions, but he never applied for a particular position. Jones's online profile amounted to no more than an expression of a general interest in being rehired and is not sufficient to satisfy the application requirement.[6]

Accordingly, the district court did not err in granting summary judgment to Alabama Power on Jones's claims of race discrimination and retaliation.

**AFFIRMED.**

---

[6]Because we conclude that Jones failed to show he suffered an materially adverse employment action, we do not address whether he satisfied the "causal connection" element of a prima facie case of retaliation.