[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15447
Non-Argument Calendar

_____

D. C. Docket No. 04-02370-CV-JEC-1

MAYON J. HOARD,

Plaintiff-Appellant,

versus

CHU2A, INC. ARCHITECTURE ENGINEERING PLANNING,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 27, 2007)

Before BLACK, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Mayon J. Hoard, a 63-year-old man who has Graves disease, appeals the

summary judgment entered in favor of his former employer, CUH2A, Inc., and against Hoard's complaint of discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117(a), and the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 2000e-5(f)(3). We affirm.

## I. BACKGROUND

CUH2A is a privately owned engineering and architectural firm. Its headquarters are in Princeton, New Jersey, but it maintains an office in Atlanta, Georgia. Hoard was hired by CUH2A as a senior staff engineer for the Atlanta office in February 2002. Bill Freeman, the director of HVAC Engineering for the Atlanta office, attended Hoard's interview in person. Steve Waller, director of HVAC Engineering for all operations of CUH2A, and Joe Lisowski, senior controls engineer, attended the interview via videoconference. During the interview, Hoard told Freeman, Waller, and Lisowski that he had a medical condition related to a thyroid problem. Hoard also told them his high school graduation date so that CUH2A would be aware of his age and years of work experience.

Hoard was 58 years old when he was hired by CUH2A. Hoard performed well at his job for the first year, and received favorable six-month and annual reviews. The annual review was dated April 25, 2003, but covered the period from

February 2002 until February 2003.

Beginning in February 2003, Hoard began experiencing problems at work. Hoard did not get along with Freeman, his direct supervisor. Hoard sent several emails to two of his supervisors, Waller and Liwoski, addressing staffing and organizational issues. A recurring theme in the correspondence was Hoard's criticism of management in the Atlanta office and Hoard's request that he not be required to report to Freeman.

In April 2003, Hoard traveled to Princeton, New Jersey, to meet with Waller and Liwoski regarding his suggestions about the organization and staffing of the company. In anticipation of this meeting, Hoard drafted an outline of items which he believed would "provide a significant improvement in [his] performance." The list included items such as a new laptop computer, access to a remote server, a company-paid cell phone, a wage increase, and additional vacation time. One of the items on the list was "[r]eduction of area noise in [his] workspace," but Hoard noted that "[t]his is a low priority issue." Waller and Liwoski spent two full days meeting with Hoard to discuss his requests and suggestions for staffing and company organization.

Between February and May 2003, Hoard was involved in at least three conflicts with co-workers. On May 9, 2003, Hoard became so frustrated about one

3

of these conflicts that he left the office for the day without obtaining approval from Freeman, his supervisor. As a result, Hoard missed a scheduled meeting that afternoon. CUH2A formally disciplined Hoard after this incident by giving him a written "final warning." During this time, CUH2A also became aware that Hoard had billed over 300 hours to an overhead account, but had no work product to show for the time.

Following these events, CUH2A decided that it was not in the best interest of the company for Hoard to continue to work there. In June 2003, CUH2A offered Hoard the option of resignation or termination. Hoard resigned.

Hoard filed a complaint in the district court that alleged age and disability discrimination. CUH2A moved for summary judgment. The district court entered summary judgment in favor of CUH2A.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. SEC v. Adler, 137 F.3d 1325, 1332 (11th Cir. 1998). Summary judgment should be granted if "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Hoard presents three arguments. First, Hoard contends that the district court erred when it determined that Hoard failed to establish that he was "regarded as" disabled by CUH2A and granted summary judgment to CUH2A on his ADA claim. Second, Hoard contends that the district court erred when it granted summary judgment to CUH2A on Hoard's claim of retaliation under the ADA. Third, Hoard argues that the district court erred when it granted summary judgment to CUH2A on his ADEA claim. All fail. We address each argument in turn.

### A. Hoard Failed to Present Substantial Evidence That He Was "Regarded As" Disabled.

The district court held that Hoard failed to establish a "prima facie" case under the ADA, because Hoard did not present evidence that he was "disabled" or "regarded as" disabled. On appeal, Hoard challenges the determination that he was not "regarded as" disabled. To the extent Hoard's reply brief argues that he is disabled, that argument has been waived and is not properly before us. See Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003).

Hoard contends that CUH2A regarded him as disabled. 42 U.S.C. § 12102(2)(C). An individual is "regarded as" disabled if he "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment

5

whatsoever, but is treated by an employer as having a disability a recognized by the ADA." 29 C.F.R. § 1630.2(l). Hoard argues that CUH2A treated him as though his Graves disease substantially limited the major life activity of working.

We agree with the conclusion of the district court that Hoard failed to present sufficient evidence that CUH2A regarded Hoard's Graves disease as substantially limiting his ability to work. It is well established that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Rossbach v. City of Miami, 371 F.3d 1354, 1359 (11th Cir. 2004). To meet the "regarded as" definition of disabled, Hoard must prove that CUH2A considered him "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1620.2(j)(3)(i); see also Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1157 (11th Cir. 2005). Hoard has not proved this fact.

In support of his argument that CUH2A regarded him as disabled, Hoard relies on several comments made by his supervisors concerning Hoard's behavior at work during the last three months of his employment. Hoard points to Freeman's remarks that plaintiff had "developed behavior problems" and had become "inappropriately aggressive." In Hoard's annual review, Freeman stated that Hoard could "sometimes let his surroundings and others affect his

6

performance." Hoard also cites statements by Waller that Hoard was "unreasonable and intolerable," and had become "an undue hardship" and a "liability."

These comments fail to establish that CUH2A treated Hoard as though his Graves disease substantially limited his ability to work, and the comments fail to establish that CUH2A regarded Hoard as "unable to work in a broad class of jobs." Sutton v. United Airlines, Inc., 527 U.S. 493, 491, 119 S. Ct. 2139, 2151 (1999). The comments evidence the opinions of Hoard's supervisors about his admitted attitude and behavior problems, not his Graves disease. "Where a defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact, . . . a finding that a plaintiff was regarded as disabled . . . is inappropriate." Hilburn v. Murrata Electronics, 181 F.3d 1220, 1230 (11th Cir. 1999). Hoard also failed to provide evidence that CUH2A perceived him as substantially limited in his ability to work other jobs in the engineering field. The district court correctly entered summary judgment.

### B. Hoard's ADA Retaliation Claim Fails Because Hoard Failed to Establish Pretext.

Hoard argues that the district court erred when it granted summary judgment to CUH2A and against his claim of retaliation under the ADA. The district court concluded that, even if Hoard could establish a prima facie case of retaliation,

7

Hoard's complaint failed because he failed to present substantial evidence that the legitimate, nonretaliatory reasons provided by CUH2A for his termination were pretextual. We agree with the district court.

"[W]e assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). Like the district court, we assume, without deciding, that Hoard established a prima facie case of retaliation. "Once a prima facie case is established, the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation." Id. If the employer produces a nondiscriminatory reason, the burden shifts back to the plaintiff to establish that the proffered reason is pretextual. Id. "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004).

Hoard alleges that CUH2A retaliated against him for making a request for accommodation by giving him a "Final Warning" and asking for his resignation, but even if we assume that Hoard established a prima facie case of retaliation, CUH2A provided legitimate non-retaliatory reasons for both the "Final Warning"

and the resignation request. CUH2A explained that it gave Hoard a final warning for leaving the office on May 9, 2003, without prior authorization. Hoard admits the conduct described in the "Final Warning," but characterizes the warning as "frivolous." Hoard is not authorized to "substitute his business judgment for that of the employer." Chapman v. AI Trans., Inc., 229 F.3d 1012, 1030 (11th Cir. 2000)(en banc). His characterization of the warning as frivolous is insufficient to show pretext. CUH2A also offered several reasons for its request for Hoard's resignation including confrontations between Hoard and other employees, the time demand Hoard's conduct placed on CUH2A management, and the inability of Hoard to account for over 300 hours of time that he billed to an overhead account. These reasons are supported by the record, including Hoard's own deposition testimony. The district court correctly granted summary judgment to CUH2A.

C. *Hoard's ADEA Claim Fails Because Hoard Failed to Establish Pretext.*

The parties do not dispute that Hoard established a prima facie case under the ADEA, but CUH2A offered legitimate, nondiscriminatory reasons for asking for Hoard's resignation, which we have already mentioned. Because CUH2A articulated legitimate, nondiscriminatory reasons for its actions, the presumption of discrimination was rebutted. The burden of production shifted to Hoard to offer evidence that "the reasons given by the employer were not the real reasons for the

9

adverse employment decision." Chapman, 229 F.3d at 1024.

Hoard's arguments that the articulated reasons for his termination were a pretext for age discrimination fail. Contrary to Hoard's contention, CUH2A was consistent in its reasons for terminating Hoard. There also is insufficient evidence that a fellow employee, Marlene Neiman, was terminated because of her age. Neiman testified that she did not believe she was treated differently because of her age. Finally, that CUH2A did not have an antidiscrimination policy is not evidence of pretext. Because Hoard failed to rebut the proffered nondiscriminatory reasons, CUH2A was entitled to summary judgment.

## IV. CONCLUSION

The summary judgment in favor of CUH2A is

**AFFIRMED.**