Asencion LUNA, Plaintiff

v.

WALGREEN COMPANY d/b/a Walgreens, Defendant.

No. 07–21095–CIV.

United States District Court, S.D. Florida, Miami Division.

Aug. 22, 2008.

Sina Negahbani, Miami, FL, for Plaintiff.

Lori Anne Brown, Gaye Lon Huxoll, Patrick F. Martin, Littler Mendelson, Miami, FL, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

ADALBERTO JORDAN, District Judge.

Ms. Luna, claiming to be disabled because of her inability to stand for long periods of time, filed this action alleging that Walgreens failed to accommodate her and retaliated against her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102, *et seq.*, the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.01 *et seq.*, and the Florida Whistleblower's Act (FWA), Fla. Stat. § 448.101, *et seq.* In Count I, Ms. Luna alleges that Walgreens failed to accommodate her disability in violation of the ADA and the FCRA. In Count II, she alleges that Walgreens unlawfully retaliated against her in violation of the ADA and the FCRA. In Count III, she alleges, without any explanation, that Walgreens unlawfully retaliated against her in violation of the FWA. Walgreens moved for summary judgment and on July 25, 2008, I heard oral arguments from the parties. At oral argument, Ms. Luna withdrew any claims of actual disability, and chose to proceed only on the theory that Walgreens regarded her as disabled.

For the reasons which follow, Walgreens' motion for summary judgment [D.E. 49] is GRANTED.

## I. FACTS[1]

Ms. Luna began her employment with Walgreens in the liquor department of one of its stores in December of 1986. She later transferred to another Walgreens store (Store 2973) as a pharmacy technician, and while working at that store she became a certified pharmacy technician in

---

1. For the purposes of this motion, the facts are either undisputed or read in the light most favorable to Ms. Luna, as they must be at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The factual allegations are based upon an extensive review of Ms. Luna's entire deposition testimony, despite the lack of helpful citations or excerpts by her counsel.

1999. Ms. Luna worked full time as a senior pharmacy technician, a position she held until her employment with Walgreens ended on August 14, 2006.

Ms. Luna suffers from degenerative joint disease, herniated disks, and knee problems. According to her deposition testimony, Ms. Luna testified that, at the relevant time of her employment, she could only stand for brief periods, "ten to fifteen minutes. I have to sit or my knee goes out." Upon further questioning, she stated that she could stand fifteen to twenty minutes. Ms. Luna alleges that her impairments prevent her from standing for long periods of time. Ms. Luna is currently employed at Publix and can now stand for a longer period of time. She has lost weight since her employment at Walgreens, a little more than forty pounds, and can now stand up to fifty minutes at a time, at which time she needs to move around.

Ms. Luna alleges that Walgreens accommodated her disability in the past by allowing her to use a chair, but ceased to accommodate her when the chair was removed from the pharmacy on August 2, 2006. Ms. Luna agrees that the use of chair was not introduced in the pharmacy as a result of a specific request she made, but points to several doctors' notes that pre-date August 2006, which she contends put Walgreens on notice of her disability. For example, prior to 2001, she gave a note from Dr. Sarnow to either the pharmacy manager or the store manager, stating that she should wear sneakers (which at that time was not allowed by Walgreens) because of her back condition. The note was produced when she was at Store 1600, before her transfer to the relevant Walgreens store (Store 2973), and she does not know if anyone at Store 2973 ever saw this note. Furthermore, prior to Au-

gust of 2006, Ms. Luna presented a copy of an MRI to the store manager, Mr. Jagassar, for the purpose of communicating her condition and demonstrating that she needed to sit. Mr. Jagassar looked at the MRI and handed it back to Ms. Luna, but she does not know whether he communicated the contents of that report to anyone. Ms. Luna also points to three doctors' notes requesting she be excused from jury duty because she cannot sit or stand for long periods of time without changing positions. These notes, however, were written on April 23, 2001 and November 4, 2001. *See* Plaintiffs Statement of Disputed Facts, Exhibit 2.

Ms. Alfa King became Ms. Luna's store manager in July of 2006. On August 2, 2006, Ms. King removed the chair from the pharmacy. Ms. Luna alleges that the removal of the chair was the first act of discrimination. Because Ms. King could not find the jury duty letters, Ms. Luna gave them to her. When Ms. King reviewed the jury duty letters, she told Ms. Luna to bring updated medical information demonstrating her need to sit because the last documentation that referred to any knee and back problems was in November of 2004. Ms. Luna states that prior managers acknowledged her disability when she presented them the jury duty letters and did not require medical documentation.

On August 7, 2006, Ms. Luna requested, and Dr. Graves faxed, a letter to the Walgreens pharmacy, stating that as a result of her degenerative joint disease and several herniated disks in her back, as well as knee problems, she needed to sit at work.[2] Ms. Luna gave this note to Ms. King, who told her that she would review the note with Jorge Morales, her district manager, and get back to her. Ms. Luna says that

---

2. Dr. Graves' note does not state at what intervals Ms. Luna could sit or stand.

she asked for the chair at that time and Ms. King said no. Between the removal of the chair on August 2 and her last shift on August 13, Ms. Luna worked a total of seven days in the pharmacy (August 2, 3, 4, 6, 7, 8, and 13). On August 5, 2006, she reported to work for the sole purpose of reviewing Walgreens' employment policies with Ms. King. On August 7 and 8 of 2006, Ms. Luna worked the shift from 9 a.m. to approximately 5 p.m.

On August 7, 2006, Ms. Luna also sent an email to Vanessa Sanders, District Pharmacy Training Coordinator, with copies sent to Bobby Espinosa, the District Pharmacy Supervisor. In her email, she stated that the chair was removed on August 2, that she had a medical condition which required her to sit, that she gave Ms. King copies of a current medical letter indicating her condition, and that she had requested to use the chair in the office but was denied. *See* Plaintiff's Statement of Disputed Facts, Exhibit 1. Ms. Luna never spoke to either Ms. Sanders or Mr. Espinosa. Although it is not clear from the record when, at some point Ms. Sanders left a message for Ms. Luna, stating that it was a personal matter and she wanted to talk to her. Ms. Luna did not respond to this call. She also did not contact Mr. Espinosa via phone and had no discussions with him about her need for a chair or her email.

After work on August 8, 2006, Ms. Luna went to an urgent care facility due to pain relating to her back and knee, and received a note excusing her from work for the next three days. After August 8, the next time she worked was Sunday, August 13, 2006. Although Ms. Luna was not allowed to use a chair in the pharmacy, on a few occasions she took a chair from the office and used it in the pharmacy. For example, on August 13, Ms. Luna brought a chair from the office and used it to work in the pharmacy. That same day, she sent an email to Mr. Morales, in which she made a formal request for accommodation—the use of a chair. She requested a response from Mr. Morales within five days.

The next day, Monday, August 14, Ms. Luna went to the EEOC office before reporting to work. She talked to an EEOC investigator, Ms. Bailey, and told her she was going to talk to her supervisor that day about her need for a chair. She reported for her shift at Walgreens and clocked in at 2:05 p.m. She went to the pharmacist and told her she was in pain from her back and knee, and was going to ask for a chair. She went to the office to get the chair, and while she was getting the chair, Ms. Brito, the hourly assistant manager on duty, came and asked her if she had obtained authorization from Ms. King to use the chair. Ms. Luna responded that she had not spoken to her, and Ms. Brito told her that she could not use the chair. According to Ms. Luna: "she [Ms. Brito] told me I couldn't have the chair; that it cause [sic] problems at work for taking the chair; and if I can't stand, punch out. And she shrugged her shoulders."[3] Ms. Luna claims that she was in tears from the pain, "couldn't take the pain anymore," so she left, "went home and took some medication."[4] She clocked out at 2:06 p.m., one minute later.

Ms. Luna's deposition testimony is unclear and somewhat inconsistent regarding the "punch out and go home" comment. In another part of her deposition, she tes-

---

3. Ms. King was not working on August 13 or 14

4. It is Ms. Luna's belief that because Walgreens took the chair away, her back and knee pain was aggravated. She does not recall if a doctor made such a statement.

tified to the following sequence of events. In her EEOC questionnaire, she wrote that on August 2, Ms. King removed the chair and asked for an updated letter explaining the circumstances of her condition. Ms. Luna asked Ms. King to accommodate her until August 6, at which point Ms. Luna would provide an updated medical note. Then either on August 6 or at some point after August 6, Mr. Cortes, another assistant manager, came to the pharmacy and told her that Ms. King said that "if you can't stand, punch out and go home."

It is not very clear if Ms. Brito told her on August 14, "if you can't stand, punch out and go home." Ms. Luna testified that she does not remember if Ms. Brito said "punch out and go home," *on August 14*, as Ms. Brito had made that comment to her previously. Ms. Luna states that Ms. Brito told her "to punch out and go home" at some point between August 2 and August 13, but she does not remember when. In any event, for the purposes of this motion, I assume that Ms. Brito told Ms. Luna "to punch out and go home" on August 14. Ms. Luna admits, however, that Ms. Brito did not have the authority to terminate her, expressly admitting that Ms. King has such authority. She testified, however, that she was in fear of her health and that is the reason she punched out. She concedes that no one at Walgreens ever told her she was fired or terminated.

The record is also unclear about the events that transpired after her "separation" from Walgreens. Ms. Luna states that after she left Walgreens, she did not talk to anyone at Walgreens about her need for a chair or her knee and back problems. In response to a question asking if others individuals at Walgreens attempted to call her after August 14, Ms. Luna said "No. Because if they wanted to communicate with me, they could have sent a letter." She acknowledges that Ms. Sanders called her on a personal matter, although the date of the call is unclear. In response to whether Mr. Cortes called her, she testified as follows:

A: My phone is a cellular. Metro PCS. Sometimes it works. Sometimes it does.

Q: Does your Metro PCS phone have voicemail?

A: I had voicemail. But if—When I left there, I didn't bother returning calls or anything else.

Q: Okay. Why didn't you return any phone calls?

A: As far as I was concerned, I was fired. Why should I ever talk to them?

On October 2, 2006, Ms. Luna received a letter from Walgreens asking for the reasons why she had separated from Walgreens. She did not respond to this letter.

In November of 2007, Ms. Luna started working at Publix Super Markets as a part-time cashier. The day before she was hired, she informed her manager at Publix that she suffered from a disability, that she had knee problems, and that sometimes she wore a brace. Ms. Luna did not request special accommodation, however, and she does not receive special privileges that other employees do not. She does claim, however, that her managers nonetheless accommodate her at Publix: she gets an hour for lunch, they send someone else to bag so she does not have to lift anything, or she puts the merchandise on the shelves so she moves around, and they allow her to move away from the register. She does not use a chair at Publix.

Ms. Luna filed a charge of disability discrimination with the EEOC, and after receiving a right to sue letter, she filed suit against Walgreens. Her complaint

alleges that Walgreens violated the ADA, the FCRA, and the FWA, by failing to reasonably accommodate her disability and by "actually/constructively discharging" her.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *see Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See United of Omaha Life Ins. v. Sun Life Ins. Co.,* 894 F.2d 1555, 1558 (11th Cir.1990).

## III. MS. LUNA'S CLAIMS

### A. FAILURE TO ACCOMMODATE UNDER THE ADA[5]

■ The ADA requires covered entities, including private employers, to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) she is disabled; (2) she is a qualified individual, with or without reasonable accommodations; and (3) she was subjected to unlawful discrimination because of her disability. *See Holly v. Clairson Industries,* 492 F.3d 1247, 1255–56 (11th Cir.2007). The ADA defines disability to include: a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such impairment, or being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2)(A)-(C).[6] *See also*

---

**5.** Disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims. *See Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1221 (11th Cir. 2000). I therefore consider both claims together and the following analysis addressing Ms. Luna's ADA claim also applies to her FCRA claim.

**6.** The EEOC regulations define the three elements of a disability: (1) a "physical or mental impairment," (2) that "substantially limits," (3) any "major life activities." *See* 29

C.F.R. §§ 1630.2(h)-(j). Under the regulations, a "physical impairment" includes "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." § 1630.2(h)(1).

The term "substantially limits" means, among other things, being "[u]nable to perform a major life activity that the average

*Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 193, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

■■■ In order for any ADA claim to succeed, the claimant must show that her condition of impairment rises to the level of a disability. *See Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215–16 (11th Cir.2004). In Ms. Luna's case, as noted earlier, the sole basis of her contention that she was "disabled" is § 12102(2)(C). Under the "regarded as" prong, a person is "disabled" if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception. *Id.* at 1216. As with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual. *See* 42 U.S.C. § 12102(2)(C); *Hilburn v. Murata Elecs. North America, Inc.*, 181 F.3d 1220, 1230 (11th Cir.1999).

The question here is whether Ms. Luna was disabled under subsection (C) of the ADA's disability definition at the time that she sought an accommodation from Walgreens. *See* 42 U.S.C. § 12102(2)(C). Ms. Luna claims that Walgreens "regarded" her as having a physical impairment and discriminated against her by refusing to provide her with a chair at her workplace.

The EEOC issued regulations interpreting the term "disability" in the ADA. *See* 29 CFR § 1630.2(g)-(*l*). According to the regulations:

> [R]egarded as having such an impairment means: (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section [physical or mental impairment] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*).[7] Ms. Luna does not specify under which category of the regulation she falls under, or even acknowledge the existence of these categories. Upon reviewing the record, it appears that her "regarded as" disability arises under category 1, namely that she has a physical impairment that does not substantially limit a major life activity but is treated by Walgreens as constituting such limitation. She does not fall under category 2 because there is no mention that her physical impairment was a result of her employer's

person in the general population can perform"; or being "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." § 1630.2(j).

Finally, "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," § 1630.2(i).

**7.** The Supreme Court noted the persuasive authority of the EEOC regulations in *Toyota*

*Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Because both parties accepted the EEOC regulations as reasonable, the Court assumed they were reasonable but did not decide the level of deference, if any, they are due. *Id.* The Court proceeded to examine the plaintiffs disability claim by relying on the regulations' interpretation. *Id.* at 195–96, 122 S.Ct. 681. Courts, including the Eleventh Circuit, frequently look to EEOC regulations to assess whether a physical impairment substantially limits a major life activity. *See. e.g., Hilburn*, 181 F.3d at 1226.

attitude, and she cannot claim category 3 because she does have a physical impairment.

According to the Supreme Court, there are two apparent ways in which individuals may fall within the "regarded as" definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *See Sutton v. United Air Lines*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Again, Ms. Luna fails to acknowledge or state which category her perceived disability arises under, but only the second category is applicable. The first category is inapplicable because Ms. Luna has an actual impairment; it is not a result of Walgreens' mistaken belief. In both cases, it is necessary that a covered entity entertain misperceptions about the individual— it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Id.* These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of ... individual ability." *See* 42 U.S.C. § 12101(7). *See also School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) ("By amending the definition of 'handicapped individual' to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment"); 29 C.F.R. § 1630.2(*l*) (appendix) (explaining that the purpose of the regarded as prong is to cover individuals "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities").

To qualify as disabled on a "regarded as" theory, Ms. Luna must show that Walgreens refused to allow her the use of a chair because it regarded her as having a physical impairment as that term was defined by the ADA. *See Sutton v. Lader*, 185 F.3d 1203, 1208 (11th Cir. 1999).[8] Not every physical impairment is a disability under the Act. *See id.* Thus, in order for a plaintiff to prevail on a perception theory of disability discrimination, she must be able to show that, as with a real impairment, the perceived impairment is "substantially limiting" and significant. *See id.; Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir.1998). In determining whether a physical impairment substantially limits a major life activity, the regulations instruct courts to consider (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment. *See* 29 C.F.R. § 1630.2(j)(2). The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled. *See Sutton*, 185 F.3d at 1209. To establish that an employer regarded an employee as "disabled," a plaintiff must first introduce substantial evidence that the employer regarded her as having a permanent or long-term impairment. *Id.*

---

**8.** The plaintiff in *Sutton* brought his claim under the Rehabilitation Act. The standard for determining liability under the ADA, however, is the same as that under the Rehabilitation Act. *See Sutton*, 185 F.3d at 1208.

Here, it is undisputed that Ms. Luna has a physical impairment. Her knee and back problems limited her ability to stand for extended periods of time, and standing is a major life activity. *See* 29 C.F.R. § 1630.2(i) (appendix) ("Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, leaning, and working. This list is not exhaustive. For example, other major life activities include, but are not limited to sitting, standing, lifting, reaching."). *See also Darwin v. Principi*, 2006 WL 5079473, at *5 (M.D.Fla. June 15, 2006), *aff'd, Darwin v. Nicholson,* 221 Fed. Appx. 918 (11th Cir.2007).

■ Walgreens argues that Ms. Luna is not *substantially* limited in her ability to stand because she is able to stand from fifteen to twenty minutes, her subsequent employment at Publix as a cashier requires her to stand, and she is able to alleviate any pain by walking around. Additionally, Ms. Luna's subsequent weight loss makes it possible for her to stand for a substantially longer period of time. There is some merit to Walgreens' arguments. The regulations instruct that in determining whether a claimant is substantially limited, the three factors to consider are the nature and severity of the impairment, the duration of the impairment, and the permanent or long term impact of the impairment. The conditions Walgreens points to seem to erode Ms. Luna's claim that she is substantially limited because they undermine these three factors. On the other hand, Ms. Luna's physical condition has changed since she began working at Publix, and it is not clear that events subsequent to August of 2006 are determinative. I need not address whether Ms. Luna is substantially limited in her ability to stand. Walgreens is entitled to summary judgment because Ms. Luna fails to demonstrate that Walgreens

*regarded* her as having an impairment that substantially limited her ability to stand.

Ms. Luna has demonstrated that Walgreens was generally aware of her back and knee problems, which in turn caused her inability to stand for long periods of time. In fact, Walgreens admits that it was aware that Ms. Luna "generally suffered from disk disease, back and knee problems." *See* Walgreens' Reply Brief at 3. But Ms. Luna has failed to show that Walgreens *regarded* her as having a physical impairment that *substantially limited* a major life activity. Ms. Luna contends that Walgreens mistakenly believed her physical impairments substantially limit her in the major life activity of standing. *See* Plaintiff's Response to Motion for Summary Judgment ("Response") at 6 ("As discussed below, given the facts and circumstances a reasonable jury can infer that the Defendant perceived or believed that Ms. Luna had a 'disability' (i.e., had the erroneous perception or believed in the myth regarding individuals with disc disease, back or knee problems))." The problem is that Ms. Luna has not provided any evidence of, or *any* mention of, what myth, negative misperception, or belief Walgreens harbored regarding individuals with disc disease, back, or knee problems. It seems to me that Ms. Luna's complete failure to point to a single myth, fear, stereotype, misperception, or belief fails the Supreme Court's *Sutton* requirement that it is necessary that an employer entertain misperceptions about the employee.

Instead of pointing to any belief, myth, or misperception, Ms. Luna takes a different approach. In claiming that Walgreens regarded her as having a disability, she points to several factors: (1) that Walgreens allowed her the use of a chair; (2) that Walgreens requested a doctor's note justifying her need to sit at work; and (3) that Walgreens failed to "disavow, rebuke,

or reject Ms. Luna's statement that 'she was considered to have a Disability" in her email requesting accommodation.[9] I do not believe any of these matters, alone or in combination, allow Ms. Luna to survive summary judgment.

### 1. USE OF CHAIR

Ms. Luna argues that management acknowledged her disability and allowed her to use a chair, and that this fact creates an issue of fact as to Walgreens' perception or belief. Ms. Luna solely cites to *Lapinsky v. Amtrak Commuter Services Corp.*, 2001 WL 210288 (E.D.Pa. Feb.28, 2001), an unpublished case from the Eastern District of Pennsylvania where the court denied summary judgment because the plaintiff raised a genuine issue of material fact as to whether she was regarded as being disabled by her employer. *Lapinsky* is distinguishable, however, because the court there noted witnesses' testimony that the employer's medical department told them they considered plaintiff to be disabled. Here Ms. Luna has failed to put forth evidence that she was regarded as disabled by Walgreens. After an entire review of her lengthy deposition testimony, I cannot find any evidence that allows a reasonable jury to find that Walgreens regarded Ms. Luna as having a disability.

Ms. Luna repeatedly argues that Walgreens perceived her back, joint, and knee conditions as a limitation on her ability to stand because it accommodated her with the use of a chair and stool. Yet an offer of accommodation does not, by itself, establish that an employer "regarded" an employee as disabled. *See Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 776 (3d Cir.2004).

*See also Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331, 335 (7th Cir.2004) ("[I]f employers accommodate for other reasons, then the fact of accommodation does not support an inference that a given employer must have regarded a given employee as disabled .... Decent managers try to help employees cope with declining health without knowing or caring whether they fit the definition in some federal statute. [The employee] offers no reason to conclude that the principal at her school knew, supposed, or cared anything about the effect of her conditions on 'major life activities' when providing breaks, chairs, and other assistance to continue teaching."); *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir.2001) ("[W]hen an employer takes steps to accommodate an employee's restrictions, it is not thereby conceding that the employee is disabled under the ADA or that it regards the employee as disabled. A contrary rule would discourage the amicable resolution of numerous employment disputes and needlessly force parties into expensive and time-consuming litigation."), *clarified in other respects*, 292 F.3d 1045 (9th Cir.2002); *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir.2000) ("The intent behind this ["regarded as"] provision, according to the EEOC, is to reach those cases in which 'myths, fears and stereotypes' affect the employer's treatment of an individual. [An employee] cannot show that this provision applies to him merely by pointing to that portion of the record in which his [employer] admitted that he was aware of [the employee's] medical restrictions and modified [the employee's] responsibilities based on them.") (internal citations omitted). Moreover,

---

9. I have combined Ms. Luna's claims because they mainly point to the use of the chair and the doctors' notes. M s. Luna states her claims ambiguously and inartfully in a convoluted brief that also violates the formatting requirements of Local Rule 5.1. Additionally, the statement of disputed facts is crammed with repetitive arguments and violates both Local Rule 5.1 as well as Local Rule 7.5 (governing statements of facts).

Ms. Luna admits that "other employees did from time to time temporarily use a chair or stool." *See* Response at 7. In sum, Ms. Luna's assertion that Walgreens perceived her as disabled because it accommodated her with a chair is not a permissible inference on this record.

### 2. DOCTORS' NOTES

Ms. Luna also points to the fact that Ms. King requested a doctor's note to allow her to use the chair.[10] Ms. Luna argues that because she provided doctors' notes and an MRI report to management, Walgreens perceived her as disabled. Ms. Luna's medical documentation consisted of the MRI report she showed Mr. Jagassar, a prior store manager, some time prior to 2006, the doctors' letters excusing her from jury duty on April 23, 2001 and November 4, 2001, and Dr. Graves' note stating that as a result of her degenerative joint disease, Ms. Luna needed to sit at work. These "medical records," however, are insufficient to establish that Walgreens regarded Ms. Luna as having a physical impairment that substantially limits a major life activity. *See Sutton,* 185 F.3d at 1209 (plaintiff failed to show that employer regarded him as disabled even though employee provided employer with doctor's letter stating that he was totally disabled for one month and partially disabled for three weeks thereafter). In *Sutton,* the plaintiff—a construction analyst—suffered two heart attacks and submitted a letter from his doctor stating that, during the period of his disability, he could not engage in the regular activities required of construction analysts. *See id.* The Eleventh Circuit

held that this evidence was insufficient to demonstrate that the employer regarded Sutton as disabled. *See id.*[11] "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled." *Id.* To establish that an employer regarded an employee as "disabled," a plaintiff must first introduce substantial evidence that the employer regarded her as having a permanent or long-term impairment. *See id.*

Ms. Luna contends that Walgreens had knowledge of her inability to stand, and Walgreens even admits that it was generally aware of her knee and back problems. This, however, is insufficient to meet her burden of introducing *substantial* evidence, because awareness of an impairment is insufficient to demonstrate that the employer regarded the employee as disabled. Her "medical records" fail to establish substantial evidence that Walgreens regarded her as having a permanent or long-term impairment. Similar to the Eleventh Circuit's rejection of the doctor's note in *Sutton,* Ms. Luna's notes and records, which do not explicitly state that she is disabled, are also insufficient. At most, Dr. Graves' note states that as a result of her degenerative joint disease, Ms. Luna needs to sit at work. Indeed, Dr. Graves testified that she had not instructed Ms. Luna regarding how long or at what intervals she was able to or not able to engage in physical activities. Under *Sutton,* this may be evidence of Walgreens' *awareness* of some physical impairment, but insufficient evidence that

---

**10.** Although it is reasonable to conclude that Walgreens did not regard Ms. Luna as disabled if it requested a doctor's note demonstrating her need to sit, I do not base my ruling on this inference because it would be inappropriate on a motion for summary judgment.

**11.** In fact, the Eleventh Circuit did not remand to the district court for a finding as to whether the employer perceived Sutton as having a substantially limiting physical impairment; it concluded that there is insufficient evidence in the record upon which such a finding could be made.

Walgreens *regarded* Ms. Luna as having a disability within the meaning of the ADA.

In asserting that Walgreens perceived her as disabled, the only evidence Ms. Luna offers is Ms. King's testimony that Ms. Luna had "some sort of incapacities." *See* Response at 9 ("clearly Ms. Luna was viewed as having 'some sort of incapacity', and thus by Defendant's own definition/standard, she was deemed disabled under the ADA—this fact alone completely negates Defendant's arguments"). Ms. King's statement that she believed Ms. Luna had "some sort of incapacities" only establishes that Walgreens was aware of her physical impairment, and under *Sutton*, that is insufficient to establish that Walgreens regarded her as disabled under the ADA. *Cf. Penchishen v. Stroh Brewery Co.*, 932 F.Supp. 671, 675 (E.D.Pa.1996), *aff'd*, 116 F.3d 469 (3d Cir.1997) (table) (employer did not perceive employee as substantially limited in the activities of walking or working because it encouraged her to work in a position that required walking and, as such, the employee was not disabled under ADA).

Although neither party mentions *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1240 (11th Cir.2005) (holding that genuine issues of material fact existed as to whether employee who suffered from vertigo was "regarded as" disabled by employer), I do note that *D'Angelo* is distinguishable from Ms. Luna's case. In *D'Angelo*, the plaintiff informed her employer that she could not work directly on the conveyor belt because she suffered from vertigo and asked for a different work assignment. *Id.* at 1223. Her supervisor asked for documentation of her condition and she gave her a doctor's note stating that she had a vertigo condition, which affected her when she worked on the belt, and that she should avoid this situation. *Id.* Subsequently, the plaintiff received a letter of termination that referenced her "medical condition," stated that the employer evaluated her position as it related to the restrictions her doctor placed on her, and that the employer is unable to continue her work because she poses a safety hazard to herself and her co-workers. *Id.* at 1224. The Eleventh Circuit noted that the plaintiff's manager and vice-president of human resources both testified that they regarded the plaintiff's impairment as substantially more limiting than her inability to work directly on a conveyor belt for prolonged periods of time. *Id.* at 1229. Her manager, for example, testified that he "knew [her condition] was going to be a problem" and he believed that her limitation applied not only to conveyor belts, but to "all moving equipment." *Id.*

Here, however, there is no testimony from anyone at Walgreens relating to Ms. Luna's substantial limitation on her inability to stand. All of Walgreens' employees testified that they had a general awareness [12] and Ms. Luna only points to Ms. King's statement acknowledging that Ms. Luna suffered from "some sort of incapacities." In the absence of competent testi-

---

12. Here is a sampling of the testimony of Walgreens' employees: (1) Ms. King: "I agree with you that she had some back pain, that is what she informed me, she had back pain;" (2) Mr. Morales: "I don't know exactly the reason [for Ms. Luna's need to sit while working], but she had some kind of problem in her legs or so;" (3) Mr. Espinosa: "The only complaint that I ever heard from Ms. Luna was basically knees, a lot of joint pain ... I would just think it would be regular every day pain just like I suffer from;" (4) Ms. Sanders: "She just said her legs were hurting;" (5) Ms. Cassata–Garcia: "I know she had a thyroid, an issue with her thyroid. I don't know what back injury she had. I don't know if the knee was just a transient thing. I don't remember that. But those are the things that I recall."

mony establishing Walgreens' perception with respect to her impairment, Ms. Luna fails to establish that Walgreens regarded her as disabled.

### 3. WALGREENS' FAILURE TO REJECT MS. LUNA'S STATEMENT THAT SHE IS DISABLED

Ms. Luna states that Walgreens' "complete failure ... to ever disavow, rebuke, or reject Ms. Luna's statement that she was considered to have a [d]isability" establishes that Walgreens regarded her as disabled. *See* Response at 9. Ms. Luna is apparently referring to the email she sent on Sunday, August 13, 2006, in which she stated that Walgreens had accommodated her disability thus far, that she was making a formal request for accommodation, and requested a response within five days. Ms. Luna's use of the word "disability," especially without any explanation as to how she was substantially impaired in her ability to stand, does not impute that perception to Walgreens. The relevant inquiry is how Walgreens perceived Ms. Luna, not how Ms. Luna perceived herself. Moreover, Ms. Luna clocked out the next day and no longer had any communications with Walgreens. Walgreens' failure to respond to Ms. Luna's email, before the time in which a response was requested, fails to provide an evidentiary basis to infer that Walgreens regarded Ms. Luna as substantially limited in her ability to stand.

Ultimately, Ms. Luna argues in a conclusory fashion that this case should go to the jury because "the issue is one of 'perception' or 'belief' by the Defendant." *See* Response at 10. The only authority Ms. Luna relies on is *Ross v. Campbell Soup Co.*, 237 F.3d 701, 702 (6th Cir.2001) (reversing the district court's grant of summary judgment because the plaintiff raised a genuine issue of material fact concerning the company's alleged perception that the plaintiff was disabled within the meaning

of the ADA). The Sixth Circuit held in *Ross* that courts must look to the state of mind of the employer, that membership in the protected class becomes a question of intent, and "that question—i.e., the employer's motive—is one rarely susceptible to resolution at the summary judgment stage." *Id.* at 705. Ms. Luna's reliance on *Ross* is misplaced because Mr. Ross provided sufficient evidence to create a genuine issue of material fact that his company regarded him as a person with a disability within the meaning of the Act. Indeed, Mr. Ross injured his back five times while on the job, he was on disability leave after the fifth injury, his doctor submitted a disability form to his employer, he wrote a letter to the company referencing "the impairment that I am currently rehabilitating," his supervisors told him that "[w]e can't have any more of this back thing," his supervisor admitted to checking up on him when Mr. Ross was away from work because of his back problems, and Mr. Ross testified that his supervisors followed him to medical appointments, obtained medical records from his doctors, and spied on him at home. *Id.* at 702–05. Furthermore, the director circulated a memorandum indicating Mr. Ross's injuries and the medical diagnoses, and later called him into a meeting inviting him to work elsewhere, and he was subsequently officially terminated. *Id.* at 703–05. The Sixth Circuit noted that his supervisor referred to Mr. Ross as the "back case" and "problem person" in a memo, and that the ADA was enacted, in part, to eliminate the sort of stereotyping that allowed employers to see their employees primarily as their disabilities. *Id.* at 707. Indeed, this memo was "the most damning of a series of comments demonstrating prominence of Ross's back condition in Campbell's decisions regarding his employment." *Id.*

Ms. Luna presents no evidence that demonstrates Walgreens regarded her through the lens of her medical condition. There is no evidence, or *any* mention, that Walgreens entertained any negative misperceptions of Ms. Luna's abilities, and numerous cases have dismissed ADA claims or granted summary judgment to the employer because the plaintiff failed to provide sufficient evidence that the employer regarded him or her as having a disability. *See, e.g., Sutton,* 527 U.S. at 490–93, 119 S.Ct. 2139 (plaintiffs failed to state a claim that the airline regarded them as disabled because they could not demonstrate that the airline's vision requirement reflected a belief that their vision substantially limited them); *Hoard v. CHU2A, Inc.,* 228 Fed.Appx. 955, 958–59 (11th Cir.2007) (affirming district court's grant of summary judgment against employee who failed to present sufficient evidence that employer regarded his Graves disease as substantially limiting his ability to work: supervisors' comments concerning employee's attitude and behavior problems failed to establish that employer treated employee as though his Graves disease substantially limited his ability to work or that employer regarded employee as unable to work in abroad class of jobs); *Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1217 (11th Cir.2004) (affirming district court's grant of employer's motion for judgment as a matter of law: "We conclude that no reasonable jury could find that Carruthers's evidence established that BSA perceived her impairment as one that substantially limited the major life activities of working or performing manual tasks. Carruthers herself admitted at trial that BSA's knowledge of her condition was limited to her physician's diagnosis of a bilateral hand strain/sprain and her work restrictions. Aside from BSA's awareness of her initial diagnosis and work restrictions, the only other support Carruthers offers for her contention that BSA perceived her to be disabled is the fact that (1) BSA informed her that she would be terminated if she could not maintain a full-time schedule and (2) BSA placed an advertisement for her replacement shortly after learning of her inability to perform the basic tasks of her position. Based on this record, we find no indication that BSA regarded, or would have had any reason to regard, Carruthers's condition as rendering her incapable of performing 'either a class of jobs or a broad range of jobs in various classes.' "); *Hilburn,* 181 F.3d at 1226 (former employee failed to show that former employer regarded her as being disabled, where between onset of her heart problems and time that she first applied for different position, no evidence of discrimination was available because former employee continued to perform the same or similar work that she had previously performed); *Watson v. City of Miami Beach,* 177 F.3d 932, 935 (11th Cir.1999) (city police officer failed to establish that city regarded him as having mental impairment, because evidence that other officers regarded plaintiff as "paranoid," "disgruntled," "unusual," "suspicious," and "threatening" merely showed that officer had serious personality conflicts with members of his department, which did not rise to the level of mental impairment under ADA); *Matthews v. Village Ctr. Cmty. Dev. Dist.,* 2006 WL 3422416, at *12 (M.D.Fla. Nov.28, 2006) (in an ADA case where plaintiff argued her employer regarded her as substantially limited in her ability to work and submitted her testimony, affidavit, and documentation from her treating physician, court held that there was no genuine issue of fact that the employer viewed her as substantially limited in performing her job because there was no evidence that she was treated any differently than any other employee).

In sum, Ms. Luna has failed to show that Walgreens regarded her as disabled

under the ADA. I conclude that Ms. Luna failed to provide sufficient evidence and authority to create a genuine issue of fact concerning this essential element of her prima facie case. Thus, because the record would not permit a reasonable jury to conclude that Walgreens regarded Ms. Luna as "disabled," summary judgment is appropriate on her ADA claim.

Because I conclude that Ms. Luna was not regarded as disabled under the ADA, I therefore need not consider whether she was a qualified individual or whether Walgreens reasonably accommodated her. *See Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 858 (11th Cir.1998) ("We conclude that Swain does not have a disability under the ADA. We therefore need not consider whether Swain made a sufficient demand for an accommodation after telling Maxwell the problem had been resolved or whether HCSB reasonably accommodated Swain. Employers have no duty to accommodate an employee if the employee is not disabled under the ADA.... Similarly, we need not address whether Swain was constructively discharged.") (internal citations omitted).

### B. RETALIATION UNDER THE ADA AND THE FWA

The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by this chapter." 42 U.S.C. § 12203(b). ADA retaliation claims are assessed under the same framework employed for retaliation claims under Title VII. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); *Wofsy v. Palmshores Retirement Cmty.*, 2008 WL 2747025 at *3 (11th Cir. July 16, 2008). To establish a prima facie case of unlawful retaliation under the ADA, as well as the FWA,[13] a plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity; and (3) there is a causal link between the protected activity and the adverse action. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). *See also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (announcing "materially adverse" element for Title VII claims). The retaliation provision contains a materiality requirement and an objective standard. *See Burlington*, 548 U.S. at 67–68, 126 S.Ct. 2405.[14] Once a prima facie case has been established, the employer has the burden of

---

**13.** In order to raise a successful claim of retaliatory discharge under the FWA, a claimant must show that: (1) she engaged in statutorily protected expression, (2) she suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity, and (3) there was some causal relation between the events. *See Rutledge v. SunTrust Bank*, 262 Fed.Appx. 956, 958–59 (11th Cir.2008). Actions brought pursuant to the FWA are analyzed under the same standard as a federal retaliation claim. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir.2000). Because Ms. Luna alleges the same set of factual allegations to support her FWA claim as her ADA claim, I consider both these claims together.

**14.** With regard to the materially adverse prong of the prima facie case, the Supreme Court has characterized the anti-retaliation provision as protecting an individual not from all retaliation, but from retaliation that produces injury or harm. *See Burlington*, 548 U.S. at 67, 126 S.Ct. 2405. The acts must be material and significant and not trivial. *Id.* The plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or support-

articulating a legitimate nondiscriminatory reason for the challenged employment decision. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir.1997). The plaintiff then must "demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id.*

■■■■■ To satisfy the first element of the prima facie case, it is sufficient that an employee have a good faith, objectively reasonable belief that her activity is protected by the statute. *See Standard*, 161 F.3d at 1328. In this case, Ms. Luna argues that her request for accommodation of her back and knee problems constitute statutorily protected activity. It would be sufficient for her to show that she had a good faith, objectively reasonable belief that she was entitled to such an accommodation under the ADA. Ms. Luna has produced sufficient evidence that at the time she requested the accommodation, her belief that she was disabled was objectively reasonable. Prior to 2006, Ms. Luna was diagnosed with degenerative joint disease by multiple doctors, these doctors told her she should not stand or sit for long periods of time, excused her from jury duty, and instructed her to wear sneakers to work. Dr. Graves' August 7, 2006, note also indicated that as a result of her degenerative joint disease and several herniated disks in her back, as well as knee problems, she needed to sit at work.[15] Therefore, her doctors' diagnoses and instructions could have been the basis for her belief that she was disabled under the ADA at the relevant time. In sum, Ms. Luna has presented sufficient evidence to allow a jury to rationally conclude that her belief that she

was disabled under the ADA was objectively reasonable. She therefore has established the first element of the prima facie case.

■■■ To satisfy the adverse employment action requirement, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington*, 548 U.S. at 68, 126 S.Ct. 2405. A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotation marks omitted). Here, Ms. Luna advances two theories of adverse employment action: (1) actual discharge and (2) constructive discharge.

■■■■■ Without citing to any relevant law, Ms. Luna claims that she was actually discharged when Ms. Brito told her "if you can't stand, punch out and go home," on August 14. Assuming that Ms. Brito did make this statement on August 14, this contention is without merit. The issue of whether an actual termination has occurred is determined in light of the particular circumstances of the controverted job action. *See Thomas v. Dillard Dept. Stores, Inc.*, 116 F.3d 1432, 1434 (11th Cir.1997) ("An actual discharge ... occurs when the employer uses language or engages in conduct that 'would logically lead a prudent person to believe his tenure has been terminated'.") (citing *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 88 (2d Cir.1996)). The inquiry of actual discharge in the context of Title VII focuses on reasonable perceptions of the employee, not on whether formal words of firing were in fact spoken. *See Chertkova*, 92 F.3d at 88.

---

ing a charge of discrimination.' " *Id.* (internal quotations omitted).

**15.** In her August 13, 2006, email, Ms. Luna made a formal request to Walgreens to accommodate her disability and sent a copy to the American Disability Association.

■ Here, the particular circumstances and Ms. Luna's perceptions fail to establish that Walgreens actually discharged Ms. Luna. Ms. Luna acknowledges that no one at Walgreens ever indicated to her that she was terminated. She also admits that Ms. Brito did not have the authority to fire her, and that Ms. King has such authority. Significantly, Ms. King was not working either August 13 or 14. Moreover, she continued to work after the comment was first said sometime before August 7, 2006, by Mr. Cortes and others. In fact, she worked a full week before her last day of August 14. She also used a chair on two occasions, although she retrieved the chair herself from the office, and was neither reprimanded nor suffered any adverse consequences.

■ Ms. Luna also contends that Walgreens constructively discharged her when it refused to allow her the use of a chair. To prove a constructive discharge, a plaintiff must demonstrate that an employer imposed conditions that were so intolerable that a reasonable person would be compelled to resign. *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999). "An employee's working conditions, therefore, must significantly deteriorate in order for the court to consider an employer's actions to be a constructive discharge." *Aguirre v. City of Miami*, 2007 WL 2700579, at *4 (S.D.Fla. Sept. 12, 2007). "She must show more than the working conditions were not to her liking; she must prove that the alleged intolerability of working conditions resulted from acts of discrimination." *See Schwertfager v. City of Boynton Beach*, 42 F.Supp.2d 1347, 1367(S.D.Fla.1999). Unless the employer is given sufficient time to remedy the situation, a constructive discharge will generally not be found to have occurred. *Id.*

Ms. Luna points to the fact that she was forced to go to the urgent care facility after her shift on August 8 and she was excused from work for the next three days. She further states that because she stood all day, her pain became excruciating, and she even broke down in tears. Ms. Luna points to her email, in which she wrote "my medical condition is deteriorating as a result of Walgreens ceasing to accommodate my disability." *See* Response at 15. Ms. Luna claims that "in an utterly callous and retaliatory fashion the company [Walgreens] purposely refused to allow her the use of a chair or stool." *See* Response at 16.

■ The problem with Ms. Luna's claim is that she cannot show that Ms. King's removal of the chairs, from the pharmacy was in retaliation to any protected activity she exercised. Ms. King removed the chair on August 2 and Ms. Luna's request for accommodation was subsequent to Ms. King's decision. Thus, Ms. King's removal of the chair occurred before Ms. Luna engaged in any protected activity under the ADA, and thus cannot constitute retaliation. *See Wofsy*, 2008 WL 2747025 at *4 (holding that because plaintiff received warnings months before he made his request for accommodation, he failed to establish a prima facie case of retaliation).

Moreover, Ms. Luna admits that Ms. King told her she would review Dr. Graves' note with Mr. Morales and get back to her. Thereafter, Ms. Luna sent an email, requesting a response within five days, but left Walgreens the following day after hearing the comment to "punch out," which she had heard before, and had not stopped her from working. Furthermore, there is uncontroverted evidence that Walgreens tried to reach Ms. Luna after August 14, but she did not return these calls. Under the objective standard, these cir-

cumstances fails to establish that Walgreens constructively discharged her. *See Rutledge v. SunTrust Bank,* 262 Fed. Appx. 956, 958–59 (11th Cir.2008) (employee did not establish prima facie claim for constructive discharge in violation of the FWA, absent showing that she was subjected to materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity). *See also Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.,* 507 F.3d 1306, 1316 (11th Cir.2007) (holding that supervisor's comment that employee did not look well and she should leave work and *go home* was not an adverse employment action as it did not meet even a minimum "threshold level of substantiality," but an innocuous statement of concern for employee's admitted fatigue at work and a reminder that leave was available to her if needed); *Van Der Meulen v. Brinker Intern.,* 153 Fed.Appx. 649 (11th Cir. 2005) (affirming district court's grant of summary judgment that constructive discharge claim failed because plaintiff did not present evidence which would show that her work environment was so intolerable that a reasonable person would be compelled to resign); *Fitz v. Pugmire Lincoln–Mercury, Inc.,* 348 F.3d 974, 977–78 (11th Cir.2003) (holding that a withdrawal of a reprimand, an offer to transfer to another managerial role, two posted cartoons, suspicions of an unsubstantiated plot to terminate the plaintiff's employment, and unsubstantiated allegation of unequal pay did not show constructive discharge). Ms. Luna therefore has failed to establish a prima facie case under the ADA because she did not demonstrate a material adverse employment action.

Because I conclude that Ms. Luna failed to show she suffered a materially adverse employment action, I do not address whether she satisfied the "causal connection" element of a prima facie case of retaliation insofar as her alleged discharge is concerned. *See Jones v. Alabama Power Co.,* 282 Fed.Appx. 780, 784–85 (11th Cir.2008). Accordingly, Walgreens is entitled to summary judgment with respect to the retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Walgreens' motion for summary judgment is GRANTED. A final judgment will be issued separately.